## Salvatore DeRose *vs.* Putnam Management Company, Inc.

Suffolk. April 9, 1986. — August 12, 1986.

Present: Hennessey, C.J., Wilkins, Abrams. Nolan & O'Connor, JJ.

*Contract,* Employment. *Public Policy. Damages,* Employment contract.

An employee at will, whose employment is terminated for reasons contrary to public policy, may recover damages from his employer on the theory of breach of contract, even in a case where the employer gains no financial advantage as a result of the termination. [208-210]

At the trial of an action by an employee who alleged that his employment had been terminated for a reason contrary to public policy, the evidence presented a question for the jury whether he had been discharged for legitimate business reasons or for failing to testify in a criminal proceeding in accordance with his supervisor's suggestion. [210-211]

In an action by an employee against his former employer, tried on the theory of breach of contract, the employee was not entitled to have the jury instructed either on punitive damages or on the measure of damages applicable to tort claims. [211-212]

Civil action commenced in the Superior Court Department on October 17, 1979.

The case was tried before *Francis J. Quirico,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Harvey Schwartz (Robert A. Griffith* with him) for the plaintiff.

*Timothy P. O'Neill (Jayne Conroy* with him) for the defendant.

*Lynn A. Girton & Marjorie Heins,* for Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

Abrams, J. The plaintiff, Salvatore DeRose, a former at-will employee of the defendant, Putnam Management Company, Inc., brought an action on a theory of breach of contract for

wrongful discharge. The gravamen of the complaint is that the defendant wrongfully discharged the plaintiff in reprisal for the plaintiff's testimony at the criminal trial of another employee for the theft of some securities. The question presented is whether an employee at-will may resort to the courts for a remedy if the employee at-will is dismissed in violation of public policy in circumstances in which the employer does not deprive the plaintiff of any bonuses, wages, or commissions. The judge concluded that such an employee would have a remedy if he were terminated in violation of public policy. The judge determined that there was sufficient evidence to have a jury consider whether the discharge violated public policy. The jury returned a verdict of $9,000 for breach of contract. The plaintiff appeals, claiming the damages are inadequate. The defendant cross appeals, alleging that an employee at-will who did not suffer any financial loss could not recover damages. We granted the plaintiff's application for direct appellate review. We affirm.

We summarize the evidence. At the time he was terminated, the plaintiff had been employed by the defendant for fourteen years as an at-will employee. At the time the plaintiff was terminated, he was the manager and assistant vice president in charge of computer operations, having received several promotions since his initial hiring in 1964.

In the late summer of 1977, the Federal Bureau of Investigation (F.B.I.) notified the defendant that $26,000,000 worth of stolen Putnam securities had been discovered in Pittsburgh. A team of F.B.I. agents moved into the company building and set up an operational base to investigate the theft. The defendant specifically directed all of its employees to cooperate fully with the F.B.I. The plaintiff did cooperate with the F.B.I.

Suspicion focused on a former employee, one Matthew McGrath, who had been fired on July 25, 1977. The plaintiff had been McGrath's direct supervisor. During 1977, the plaintiff's supervisor, Anton Thiel, Jr., was critical of various aspects of McGrath's personality and performance. Thiel frequently complained to the plaintiff about McGrath. In June, 1977, Thiel told the plaintiff that McGrath would be terminated

for falsifying initialled corrections on the daily computer fund pricing sheets. Thiel instructed the plaintiff not to notify McGrath of Thiel's decision to fire him (McGrath) until McGrath returned from his vacation. Thiel wanted to ensure sufficient time so that the locks to the building and the computer room could be changed, a normal procedure when an employee was terminated. After the locks had been changed, but before McGrath returned from vacation, the plaintiff notified McGrath of his (McGrath's) discharge. Three days after McGrath was fired, Thiel told the plaintiff that McGrath had gained access to the building on the previous evening with the suspected assistance of another employee, William Trainor. When confronted by Thiel in the plaintiff's presence, Trainor admitted that he had let McGrath into the reception area but denied that McGrath had gone elsewhere in the building.

During the F.B.I. investigation, the plaintiff talked with Thiel several times about McGrath's possible culpability. Thiel asked the plaintiff to see if he could find out any information from McGrath about the stolen securities. The plaintiff met with McGrath for that purpose but was unable to elicit any incriminating information from McGrath.

In June, 1978, a jury convicted McGrath of stealing the securities. The plaintiff testified at that trial. Prior to his testifying, the plaintiff was told by Thiel: "You are going to be testifying, you better implicate him [McGrath] because you know he is guilty." The plaintiff responded that he "didn't know any such thing." Nothing further was said. In his testimony, the plaintiff did not implicate McGrath.

After the trial, the defendant's senior officers ordered transcripts of the plaintiff's testimony as well as Trainor's testimony. Trainor told the jurors that, at the plaintiff's suggestion, he lied to Thiel about McGrath's unauthorized entry into the building. The plaintiff testified that he did not tell Trainor to lie to Thiel.

On September 27, 1978, Thiel fired the plaintiff based on three charges: "(1) poor management — failure to fire McGrath prior to the security certificates having been turned up missing; (2) informing Matthew McGrath that he was fired before he

was ordered to do so; and (3) counselling an operator, William Trainor, to tell a lie." The plaintiff filed suit in Superior Court on October 17, 1979, alleging the defendant wrongfully terminated his employment because he did not inculpate McGrath at trial. The plaintiff alleged that as a result of the defendant's actions, he was unable to obtain employment and that his reputation in the computer industry had been destroyed.[1]

1. *The defendant's motions for a directed verdict and for judgment notwithstanding the verdict.* Relying on our prior cases, the defendant contends in effect that only in the case of overreaching for financial gain by an employer can an at-will employee recover from the employer. Because the plaintiff was paid all monies due him, the defendant asserts that his motion for directed verdict or judgment notwithstanding the verdict should have been allowed. See *Gram* v. *Liberty Mut. Ins. Co.,* 391 Mass. 333, 334 (1984) (*Gram II*); *Kravetz* v. *Merchants Distribs.,* 387 Mass. 457, 463 (1982); *Maddaloni* v. *Western Mass. Bus Lines,* 386 Mass. 877, 884 n.7 (1982); *Cort* v. *Bristol-Myers Co.,* 385 Mass. 300 (1982); *Gram* v. *Liberty Mut. Ins. Co.,* 384 Mass. 659 (1981) (*Gram I*); *Fortune* v. *National Cash Register Co.,* 373 Mass. 96 (1977).

The plaintiff asks that we adopt an exception to the at-will rule by holding that an at-will employee who is terminated in violation of public policy may resort to the courts for a remedy. The judge ruled that there should be a remedy if an at-will employee is terminated in violation of public policy. He also concluded that "it would violate public policy if [the employee] were asked . . . to give evidence implicating a person and then was fired because [the employee] did not give such evidence."

The seminal case on termination in violation of public policy is *Petermann* v. *International Bhd. of Teamsters, Local 396,*

---

[1] In his complaint, the plaintiff alleged that he suffered damage to his professional reputation and was therefore unable to procure suitable employment. See *McCone* v. *New England Tel. & Tel. Co.,* 393 Mass. 231, 234 n.8 (1984). The plaintiff did not introduce any evidence on this issue at trial. On appeal he does not argue any error with respect to his claim of loss of reputation.

174 Cal. App. 2d 184, 188-189 (1959). In *Petermann,* the employer ordered an at-will employee to testify falsely at a legislative hearing and then fired the employee when he refused to commit perjury. The court held that the employer's conduct violated the State's public policy of encouraging truthful testimony and therefore was an abuse of the employer's contractual rights. Subsequent to *Petermann,* most courts which have considered the issue have permitted at-will employees to recover for wrongful terminations in violation of public policy. See, e.g., *Novosel* v. *Nationwide Ins. Co.,* 721 F.2d 894, 898-899 (3d Cir. 1983); *Perks* v. *Firestone Tire & Rubber Co.,* 611 F.2d 1363, 1366 (3d Cir. 1979); *Wagenseller* v. *Scottsdale Memorial Hosp.,* 147 Ariz. 370, 385 (1985); *Tameny* v. *Atlantic Richfield Co.,* 27 Cal. 3d 167, 178 (1980); *Glenn* v. *Clearman's Golden Cock Inn, Inc.,* 192 Cal. App. 2d 793, 797 (1961); *Sheets* v. *Teddy's Frosted Food, Inc.,* 179 Conn. 471, 476 (1980); *Parnar* v. *Americana Hotels, Inc.,* 65 Hawaii 370, 380 (1982); *Palmateer* v. *International Harvester Co.,* 85 Ill. 2d 124, 132-133 (1981); *Kelsay* v. *Motorola, Inc.,* 74 Ill. 2d 172, 181 (1979); *Frampton* v. *Central Ind. Gas Co.,* 260 Ind. 249, 253 (1973); *Adler* v. *American Standard Corp.,* 291 Md. 31, 47 (1981); *Suchodolski* v. *Michigan Consol. Gas Co.,* 412 Mich. 692, 695 (1982); *Sventko* v. *Kroger Co.,* 69 Mich. App. 644, 647 (1976); *Cloutier* v. *Great Atl. & Pac. Tea Co.,* 121 N.H. 915, 922-923 (1981); *Pierce* v. *Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72 (1980); *O'Sullivan* v. *Mallon,* 160 N.J. Super. 416, 418 (1978); *Sides* v. *Duke Hosp.,* 74 N.C. App. 331, 339 (1985); *Brown* v. *Transcon Lines,* 284 Or. 597, 612 (1978); *Nees* v. *Hocks,* 272 Or. 210, 219 (1975); *Reuther* v. *Fowler & Williams, Inc.,* 255 Pa. Super. 28, 31 (1978); *Ludwick* v. *This Minute of Carolina, Inc.,* 287 S.C. 219, 224-225 (1985); *Sabine Pilot Serv., Inc.* v. *Hauck,* 687 S.W.2d 733, 735 (Tex. 1985); *Harless* v. *First Nat'l Bank,* 162 W. Va. 116, 124 (1978); *Brockmeyer* v. *Dun & Bradstreet,* 113 Wis. 2d 561, 572-573 (1983). Contra *Hinricks* v. *Tranquilaire Hosp.,* 352 So. 2d 1130 (Ala. 1977); *DeMarco* v. *Publix Super Mkts., Inc.,* 384 So. 2d 1253 (Fla. 1980); *Murphy* v. *American Home Prods. Corp.,* 58 N.Y.2d

293 (1983). See generally Blades, Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Colum. L. Rev. 1404 (1967).[2] We too conclude that, even in cases where the employer does not gain a financial advantage, an at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy.

We turn to the instant case. The defendant does not dispute the judge's conclusion that requiring an employee to testify as the employer expects in order to retain his job violates public policy. Rather, the defendant contends that its stated grounds for firing the plaintiff demonstrated good cause for discharge, thereby negating the existence of bad faith. See Gram I, supra at 668. Thus, the defendant concludes it was error not to grant its motion for a directed verdict or, in the alternative, its motion for a judgment notwithstanding the verdict.

The defendant's argument misperceives the role of the jury. There was evidence from which the jury could find that the defendant ordered the plaintiff to cooperate with the F.B.I. and to assist in gathering information from McGrath. He did so. Nevertheless, he was unable to elicit inculpatory information from McGrath. There is no evidence that he lied or covered up for McGrath. There is no evidence that he lied at McGrath's trial. The evidence and reasonable inferences warranted the jury in concluding that the defendant fired the plaintiff for his failure to give the testimony implicating McGrath as requested by Thiel. Although the defendant gave reasons for firing the

---

[2] Student commentators also support the view that an at-will employee terminated in violation of public policy should have resort to the courts for a remedy. See generally Note, Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception, 96 Harv. L. Rev. 1931 (1983); Casenote, Kelsay v. Motorola, Inc.: Tort Action for Retaliatory Discharge upon Filing Workmen's Compensation Claims, 12 J. Mar. J. Prac. & Proc. 659 (1979); Comment, Protecting the Private Sector at Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy, 1977 Wis. L. Rev. 777; Note, Remedy for the Discharge of Professional Employees Who Refuse to Perform Unethical or Illegal Acts: A Proposal in Aid of Professional Ethics, 28 Vand. L. Rev. 805 (1975).  ·

plaintiff, a jury could have disbelieved them.[3] The weight of the evidence and the credibility of the witnesses on that issue are for the fact finder. "The jurors were not required to believe [the defendant's] testimony that the plaintiff was discharged for legitimate business reasons. When evidence on a contested matter is conflicting, the issue is for the trier of fact." *Maddaloni* v. *Western Mass. Bus Lines,* 386 Mass. 877, 882 (1982). There was no error in denying the defendant's motions for a directed verdict and judgment notwithstanding the verdict.

2. *Damages.* The plaintiff argues that the judge should have instructed the jury that he could recover for lost future earnings[4] and punitive damages.[5] He contends that the defendant's conduct was of such an egregious nature as to require punitive damages. The defendant argues that even if the evidence warranted imposition of liability, the damages recovered by the plaintiff cannot stand as a matter of law because they do not

---

[3] The reasons given by the defendant, see *supra* at 207-208, might well not be believed. There was no evidence that it was the plaintiff's duty to fire McGrath before ordered to do so by Thiel. Further, the plaintiff's alleged misdeed in prematurely notifying McGrath of his discharge occurred more than one year prior to the plaintiff's discharge. The issue whether the plaintiff counselled Trainor to lie to Thiel was one of credibility for the fact finder.

[4] The plaintiff requested the following jury instruction on compensatory damages: "As a matter of law, if you find for the plaintiff, Salvatore DeRose, you may award him such damages as are attributable to the amount of salary and fringe benefits he would have made had he continued to . . . work at Putnam minus any amounts which Mr. DeRose earned during the period after his discharge from the date of termination until the date of trial." The judge pointed out that such a rule would favor the plaintiff who waits until the statute of limitations is about to expire — as well as the plaintiff who files in the county with the longest delay due to backlog. He noted, for example, that if a plaintiff waited almost six years before bringing the suit and if it took another six years before the case was reached, the plaintiff would have twelve years of damages. The judge characterized this request as a "rule . . . of good luck." There is no error. A contract at will is not a contract for life or a term of years. Thus, there can be no recovery for future lost wages and benefits based on the contract at will.

[5] The plaintiff requested the following instruction on punitive damages: "If you find that Salvatore DeRose was terminated for his refusal to implicate Matthew McGrath and that this is a violation of public policy, you may award punitive damages to the plaintiff, Salvatore DeRose."

relate to actual past services.[6] The defendant further argues that because the plaintiff's action is in contract and not in tort, punitive damages may not be awarded.

We first address the issue of punitive damages. We agree with the defendant that the plaintiff tried his case on a breach of contract theory. There are no punitive damages in contract. See *Hall* v. *Paine,* 224 Mass. 62, 68 (1916); 5 A. Corbin, Contracts § 1077 (1951). Further, "[i]n this Commonwealth there is no such thing known to the common law as the recovery of punitive damages in addition to compensatory damages." *Boott Mills* v. *Boston & Me. R.R.,* 218 Mass. 582, 589 (1914). See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 856 n.20 (1983). The judge did not err in refusing to charge on punitive damages.

The plaintiff asserts that the damages were insufficient. In his brief, the plaintiff suggests a tort measure of damages. The plaintiff tried his case on breach of contract. Because the plaintiff's trial strategy was based on breach of contract, we do not discuss his belated claim for tort damages. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review of the acts of the trial judge." *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). See *Bernard* v. *Cameron & Colby Co.,* 397 Mass. 320, 323 (1986).[7]

---

[6] At trial it was the defendant's position that if there were a cause of action, the plaintiff could prevail but that no money damages could be awarded. The judge correctly rejected that claim.

[7] We are aware that a number of cases have permitted the plaintiff to seek liability in tort for violations of public policy. See, e.g., *Novosel* v. *Nationwide Ins. Co.,* 721 F.2d 894 (3d Cir. 1983) (refusal to participate in lobbying effort and opposition to employer's political stand); *Parnar* v. *Americana Hotels, Inc.,* 65 Hawaii 370 (1982) (refusing to avoid giving grand jury testimony about antitrust violations); *Palmateer* v. *International Harvester Co.,* 85 Ill. 2d 124 (1981) (cooperating with local law enforcement officials in the criminal investigation of a fellow employee); *Tameny* v. *Atlantic Richfield Co.,* 27 Cal. 3d 167 (1980) (refusing to engage in price-fixing); *Harless* v. *First Nat'l Bank,* 162 W. Va. 116 (1978) (refusing to violate a consumer credit code); *Kelsay* v. *Motorola, Inc.,* 74 Ill. 2d 122 (1978) (filing a claim under a worker's compensation statute); *Nees* v. *Hocks,* 272 Or. 210 (1975) (refusing to evade jury duty). Cf. *Brockmeyer* v. *Dun & Bradstreet,* 113 Wis. 2d 561 (1983) (contract damages only).

The judge instructed on a contract theory of damages. The jurors returned a verdict of $9,000.[8] As we read the plaintiff's brief, his quarrel is with the damages awarded by the jury. We express no opinion as to the proper measure of contract damages in a case such as this. See note 4, *supra*.

*Judgment affirmed.*

---

[8] There was evidence that the plaintiff was offered a job within two months of his discharge, at an annual salary of $17,000. He rejected this job offer, and three or four others, because they did not suit his salary requirements. The plaintiff said that he did not make a concerted effort to find a full-time position in the computer field during the year after his discharge. Rather, he tried to establish his own business. The jury's award of $9,000 suggests that a reasonable person in the plaintiff's position would have accepted the job offer in November, 1978.