GREGORY J. MELLO vs. STOP & SHOP COMPANIES, INC.

Bristol. February 3, 1988. — June 13, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Contract*, Employment. *Public Policy. Emotional Distress.*

In an action by a former employee at will, who alleged that he was wrongfully
discharged from employment in management of a group of retail stores
because he had informed his superiors of certain false damage and
shortage claims made by the employer's store managers against suppliers
and manufacturers, this court did not decide whether a discharge for
that reason would violate a public policy principle so as to warrant
imposing liability on the employer, where the evidence did not permit
a finding that the plaintiff would not have been discharged but for his
complaints about the false claims. [556-561]
At the trial of a claim for intentional infliction of emotional distress, it was
improper for the judge to direct a verdict for the defendant on the ground
of inconsistency between the jury's verdict for the plaintiff and their
answer to a special question, to the effect that the defendant did not
intentionally inflict emotional distress, where the jury appropriately could
have based their verdict on recklessness, that is, on a conclusion that
the defendant knew or should have known that emotional distress would
be the likely result of its conduct. [561-562]
At the trial of a claim for intentional infliction of emotional distress, a
directed verdict for the defendant was proper on the ground that the
evidence did not warrant a finding that the defendant's conduct, alleged
to have caused the plaintiff to lose advantageous business relationships
which in turn led to his emotional distress, was extreme and outrageous.
[562-563]

CIVIL ACTION commenced in the Superior Court Department
on September 23, 1982.

The case was tried before *George P. Ponte*, J., and questions
of law were reported by him to the Appeals Court. The Supreme
Judicial Court granted a request for direct review.

*Richard L. Neumeier* (*Jacqueline Y. Parker* & *John Silvia,
Jr.*, with him) for the plaintiff.

*Anil Madan* (*Steven R. Sortevik* with him) for the defendant.

*Lynn A. Girton, Marjorie Heins & Terrence J. McLarney,* for Floyd Nelson & others, amici curiae, submitted a brief.

WILKINS, J. We consider first on direct appellate review whether the evidence warranted a finding that the defendant, Stop & Shop, discharged the plaintiff Mello, an employee at will, in violation of a principle of public policy for which the law should impose liability for wrongful discharge. We conclude that the evidence did not warrant a finding that Mello was discharged in violation of such a public policy principle. Consequently, the trial judge, who has reported the propriety of his ruling for appellate consideration, erroneously denied Stop & Shop's motion for judgment notwithstanding the verdict on Mello's claim of wrongful discharge.

We also consider Mello's claim that Stop & Shop intentionally caused Mello emotional distress by its treatment of him following his discharge. We conclude that the judge, who has also reported the correctness of his ruling on this issue, committed no reversible error in ordering a directed verdict for Stop & Shop on Mello's count alleging the intentional infliction of emotional distress.

1. Opinions around the country in recent years often have favored permitting at-will employees to recover for terminations made in violation of particular public policies. See *DeRose* v. *Putnam Management Co.*, 398 Mass. 205, 209 (1986), and *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 668 n.6 (1981), where cases are collected. We have recognized that an employer is liable to a former employee at will whom it discharged because the employee failed to follow the employer's instruction to testify falsely at a trial. *DeRose* v. *Putnam Management Co., supra* at 210. More recently, we have said that, where an employee at will alleges that she was discharged because she enforced safety laws which were her responsibility to enforce, she states a claim for discharge in violation of public policy. *Hobson* v. *McLean Hosp. Corp., ante* 413, 416 (1988).[1]

---

[1] In a separate line of cases, commencing with *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977), and also involving the discharge of at-will employees without cause, we have said that the law imposes

Our cases have not attempted in general terms to identify those principles of public policy that are sufficiently important and clearly defined to warrant recovery by an at-will employee who is discharged for engaging in, or for refusing to engage in, particular conduct. The task is not an easy one. We have stated a few basic principles. The discharge of an at-will employee without cause is not alone a sufficient basis for imposing liability. *Gram* v. *Liability Mut. Ins. Co., supra* at 671. Although an argument can be made for a rule of job security in such circumstances, at least for now the Legislature must be the source of any such rule. *Id.* at 670-671. We have also said that an employer does not violate a public policy justifying the recovery of damages solely by giving a false reason for the discharge of an at-will employee. See *Cort* v. *Bristol-Myers Co.,* 385 Mass. 300, 306 (1982).

A basis for a common law rule of liability can easily be found when the Legislature has expressed a policy position concerning the rights of employees and an employer discharges an at-will employee in violation of that established policy, unless no common law rule is needed because the Legislature has also prescribed a statutory remedy.[2] If the employer discharges an at-will employee for refusal to commit an unlawful

---

an obligation of good faith and fair dealing toward such an employee that is violated when the employer fails to pay the employee expected future compensation closely related to the employee's past services. *Gram* v. *Liberty Mut. Ins. Co., supra* at 672. That principle is not involved in this case.

[2] See, e.g., G. L. c. 149, § 19B (1986 ed.), making it unlawful for an employer to discharge an employee for not taking a lie detector test and also providing a civil remedy; G. L. c. 149, § 6D (1986 ed.), providing that no employer shall penalize an employee for filing a complaint or giving notice in regard to occupational health and safety of employees engaged in using asbestos; G. L. c. 149, § 52A (1986 ed.), providing job security to an employee who takes annual training in the military reserve and giving the employee the right to sue the employer for a violation of rights; G. L. c. 149, § 148A (1986 ed.), providing that no employee shall be penalized for seeking rights under the wage and hour provisions of G. L. c. 149; G. L. c. 152, § 75B (1986 ed.), providing that no employee shall be discharged for exercising a right afforded by the workers' compensation statute and defining the remedy; G. L. c. 268, § 14A (1986 ed.), stating that no person shall be discharged for performing jury duty. See also *Federici* v. *Mansfield Credit Union,* 399 Mass. 592, 596-597 (1987).

act (see *DeRose* v. *Putnam Management Co., supra* ), or for fulfilling her duty to assure the employer's compliance with the law involving public safety (see *Hobson* v. *McLean Hosp. Corp., supra)*, another class of public policy considerations warrants recovery. As will be seen, the public policy violation on which Mello relies in this case fits into none of these clearly defined categories. As will also be seen, Mello failed to prove that Stop & Shop would not have discharged him but for Mello's conduct protected by that public policy principle on which he relies.

We turn to a consideration of the evidence most favorable to Mello. Mello started working for the Bradlees division of Stop & Shop in 1973 as a department manager in a store on Cape Cod. In 1974 he became assistant store manager of a Bradlees store in Brockton. Later he became assistant to the market manager for a district of ten stores. Mello was a good worker who put in long hours, received various raises, and was regarded as a valued employee.

In the latter part of 1979, Mello learned that buyers for Bradlees were receiving rebate checks, some payable to them personally. He told his superiors about the checks and was told to stay away from the subject. It would be speculative to infer that any unlawful conduct was involved in the practice Mello questioned.[3] About the same time, Mello learned that managers of several stores were making false damage and shortage claims against Bradlees' warehouse and against manufacturers and suppliers. Such claims involved untruthful assertions that merchandise had been delivered to a store in a defective condition or had not been delivered at all. Mello told his

---

[3] Mello does not argue here that he was discharged for reporting to his superiors that certain buyers were receiving rebate checks from suppliers. A discharge for reporting such activities would not violate public policy. Even if Mello's claims were true in this respect, Mello did not assert that the buyers' conduct was illegal. There is no evidence or claim that the buyers were keeping the rebated funds for themselves or that the rebates were unlawful. In fact, there is evidence that such funds were made available to various stores and that Mello sought the benefit of such funds for stores with which he was associated. Any wrong-doing by buyers with regard to rebate checks was internal to Stop & Shop *as far as appears on the record*.

superior, naming particular stores. His superior said it was a shame but such claims against manufacturers and suppliers were common practice. Another superior told Mello to mind his own business. There was no evidence that Mello was responsible for the false claims or for supervising the store managers who made them.[4] As to claims against manufacturers and suppliers, there was no evidence that Mello's duties would have made him a reasonable suspect of any wrongdoing with respect to claims against manufacturers and suppliers delivering directly to stores.

Shortly after these incidents, Mello was given certain samples of merchandise to deliver to Bradlees' Fall River store. Mello delivered most of the samples but, as he testified, he kept certain items for himself and others. Stop & Shop investigated the incident, accused Mello of violating company policy, and, after several meetings with Bradlees personal, discharged Mello on December 20, 1979. Only after his discharge did Mello raise the charge that Stop & Shop was seeking to get rid of him to "cover up" the illegal activities he had discovered. We are not dealing here, therefore, with a case in which the employer discharged an employee because the employee threatened to report the employer's criminal conduct to the authorities, nor are we concerned here with a case in which the employee was discharged because he agreed to testify against a fellow employee and to cooperate with law enforcement authorities (see *Palmateer* v. *International Harvester Co.*, 85 Ill. 2d 124, 132 [1981]).[5]

---

[4] Where the at-will employee himself would have been subject to the risk of criminal charges for the illegal conduct of the employer, courts have been particularly sympathetic to allowing an employee discharged for not going along with his employer to maintain an action for wrongful discharge. See, e.g., *Tameny* v. *Atlantic Richfield Co.*, 27 Cal. 3d 167, 178 (1980) (discharge for refusal to participate in illegal price-fixing scheme); *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480 (1980) (employee responsible for quality control dismissed for insisting employer comply with State statutes concerning proper labeling of products).

[5] Further relations between Stop & Shop and Mello are not important to the issue of the adequacy of the evidence on the count claiming unlawful discharge of an at-will employee. Later events will be discussed in connection with our consideration of Mello's separate claim of intentional infliction of emotional distress.

Stop & Shop seeks to persuade us that the evidence requires a finding that it discharged Mello for good cause because he took company property. The evidence permits but does not require that conclusion. Mello is not bound to accept the company's stated reason as the real reason for his discharge simply because he testified that Stop & Shop personnel told him that he was discharged for taking company property.

Mello's claim here is that the real reason for his discharge was that he complained to his superiors about false damage and false shortage claims made by store managers. We agree that the jury could properly have found that the reason Stop & Shop gave for Mello's discharge was not the real reason for his discharge. Among the various possible "real" reasons for Mello's discharge as to which there was evidence, only the claim on which he now relies (his "whistleblowing") conceivably involved a violation of some public policy warranting Stop & Shop's liability.[6]

We need not decide whether a discharge for whistleblowing concerning false claims against manufacturers and suppliers violates a public policy warranting Stop & Shop's liability, because the evidence would not permit a finding that Stop & Shop discharged Mello because of his complaints about false claims against manufacturers and suppliers. Some false claims about which Mello complained were made against Bradlees' warehouse, not against manufacturers and outside suppliers. These claims within the company concern internal matters. No well defined public policy principle would have been violated

---

[6] We assume in our analysis of this aspect of the case that an at-will employee who "blew the whistle" within his company on wrongdoing is entitled to protection (even though before discharge he did not complain to public authorities). We shall further assume that whistleblowing based on a reasonable, good faith (but erroneous) belief that the employer is violating the law should be protected in particular instances.

Michigan has a Whistleblowers' Protection Act (Mich. Comp. Laws Ann. §§ 15.361 et seq. [1981]) which protects a whistleblowing employee who resports a violation or suspected violation of law "to a public body, unless the employee knows that the report is false." Mich. Comp. Laws Ann. § 15.362 (1981). For a summary of other whistleblower legislation, see W.J. Holloway & M.J. Leech, Employment Termination Rights and Remedies 292-296 (1985).

had Mello been discharged because he reported those alleged wrongs. See *Suchodolski* v. *Michigan Consol. Gas Co.,* 412 Mich. 692, 696 (1982). Because Mello's complaints about false claims were directed collectively against false claims within Bradlees and false claims against manufacturers and suppliers and because he also complained about rebate checks, there is no basis by which a jury would have been warranted in concluding that Mello would not have been discharged but for making that portion of his complaint about false claims that involved manufacturers and suppliers.[7]

2. There remains for consideration Mello's claim of intentional infliction of emotional distress based on Stop & Shop's treatment of him after he had ceased to work for Stop & Shop and had moved to Virginia. The judge charged the jury that Mello had the burden of proving "that Stop & Shop intended to inflict emotional distress or that Stop & Shop knew or should have known that emotional distress was the likely result of its conduct." This instruction was consistent with our cases. See *Nancy P.* v. *D'Amato,* 401 Mass. 516, 520 (1988); *Simon* v. *Solomon,* 385 Mass. 91, 95 (1982); *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976).

In answer to a question, the jury stated that Stop & Shop did not intentionally inflict emotional distress on Mello. At the same time, however, they returned a verdict for Mello on his count for infliction of emotional distress. The judge announced that the answer to the question and the verdict were inconsistent. He polled the jury after he told them that their

---

[7] It is not necessary for us to consider various matters which would become important if the case had properly been one for the jury. For guidance to trial judges, we do comment, however, on the judge's jury instructions on the wrongful discharge count. There was no reason to instruct the jury about good faith and fair dealing (see n.1 above) because Mello's claim was based solely on an asserted violation of public policy. It is not for the jury to define the public policy. The judge must determine whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated. If there is such a basis, the judge must advise the jury what that public policy is and that, if they find that the employer discharged the employee for particular conduct that is protected by that public policy, they would be warranted in returning a verdict for the employee.

verdict and their answer were inconsistent. The jury adhered to their position. Mello's counsel argued correctly that the answer to the question and the verdict on the infliction of emotional distress count were not necessarily inconsistent because, although the jury found that Stop & Shop did not intend to inflict emotional distress, Stop & Shop could be liable for its recklessness, that is, if it knew or should have known that emotional distress was the likely result of its conduct. The jury improperly directed a verdict for Stop & Shop on the emotional distress count for the reason he gave.

The judge was correct, however, in ordering a directed verdict on the emotional distress count for another reason. The evidence did not warrant a finding that Stop & Shop's conduct was extreme in degree and outrageous in character within the standard set by our cases. See *Foley* v. *Polaroid Corp.,* 400 Mass. 82, 99-100 (1987), and cases cited, especially *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 145 (1976).

On the day he was discharged, a Stop & Shop representative told Mello that Stop & Shop would set him up in new employment. Mello ultimately accepted an offer from Stop & Shop to serve as a sales representative for various manufacturers who sold merchandise to Bradlees stores in Virginia. Stop & Shop buyers then arranged for Mello to be named sales representative for several companies. Mello sold his house in Massachusetts, moved to Virginia in late February, 1980, and started work as an independent sales representative on commission. Several months later Mello began to lose accounts because, as he testified, Bradlees employees were forcing the accounts away from him. By December, 1980, Mello had lost all accounts with Bradlees stores and had no income. Mello and his wife separated, and Mello was subsequently hospitalized for emotional problems.

Mello did not present a jury issue on his claim of the intentional infliction of emotional distress. There was no evidence that Stop & Shop engaged in extreme and outrageous conduct, conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts § 46, comment d (1965). We do not know what Mello relies on in support of this claim. He makes no argument in this court pointing to supporting evidence that Stop & Shop engaged in any conduct warranting liability for emotional distress.[8] The inference presumably is that Stop & Shop unfairly caused Mello to lose certain accounts. We know, however, from Mello's testimony that he dropped two accounts because they did not pay him. He ceased handling another because it made too much of a demand on his time. There simply is no evidence from which a jury properly could conclude that Stop & Shop through extreme and outrageous conduct caused Mello to lose his accounts (which in turn led to Mello's emotional distress). Even if we assume that the evidence would warrant an inference that Stop & Shop caused Mello to lose various positions as sales representative to Bradlees stores in Virginia, we do not know what Stop & Shop did in any instance or what its reason was for whatever it did. The evidence did not warrant the conclusion that Stop & Shop harassed Mello.

Although we do not agree with the reason for which the judge allowed Stop & Shop's motion for a directed verdict on Mello's emotional distress count, the motion was rightly allowed because there was no jury issue on the claim.

3. The case is remanded for the entry of judgment for the defendant on all counts.

*So ordered.*

---

[8] He has only argued that the judge erred in treating as inconsistent the jury verdict on this count and the jury's answer to a question, a point we have discussed earlier in this section of this opinion.