Sikora, J.
RULING
Upon consideration of all motion and opposition materials and of the oral arguments of counsel, the court hereby DENIES the motion of defendant Memorial Press Group (“MPG”) to dismiss both counts of the verified Complaint of Sophia Apessos pursuant to MassR.Civ.P. 12(b)(6).
REASONING
I.The Allegations of the Complaint
The main allegations of the verified Complaint are as follows. MPG employed Sophia Apessos as a newspaper reporter from approximately June of 1999 through July of 2000 (Complaint, ¶¶8, 26). During that time she suffered verbal and physical abuse from her then husband, Gilbert Hernandez (id., ¶9). On Saturday, July 29, 2000, Hernandez beat Ms. Apessos; she sought help from Plymouth Police Department (id., ¶¶12-13). The police arrested Hernandez and charged him with assault and battery (id., ¶13). The police helped Ms. Apessos to obtain a temporary abuse prevention order in accordance with G.L.c. 209A, §5 (id., ¶14). On the evening of July 29 Hernandez called Ms. Apessos from jail in violation of the order (id., ¶15).
On Monday, July 31, Ms. Apessos appeared in the Plymouth District Court to apply for an extension of the temporary abuse prevention order (id., ¶16). Also on that day she appeared at Hernandez’ arraignment upon the assault and battery charge and upon a charge of violating the restraining order (id., ¶¶18-19). She gave testimony about the Saturday night call in violation of the order (id., 119). In addition she went to the police station to have photographs taken of her face. She then returned home in order to have her door locks changed, a measure recommended to her by the police (id., 1117, 21, 22). The events occupied the entire work day.
On Saturday evening she had called her supervisor and left a voice message that she would be absent on Monday in order to attend court proceedings. On Monday afternoon she spoke by phone with her supervisor, informed that person of the need to meet the locksmith at her house, and advised that she would be at work on Tuesday morning, August 1 (id. at 1117, 23).
When she reported to work in the morning, MPG’s human resources director terminated her (id., 124). Ms. Apessos alleges that MPG discharged her because of her absence on Monday, July 31; that the absence was the effect and proximate cause of her termination (id., 1126-27).
II. Dismissal Standards Under Rule 12(b)(6)
Under Rule 12(b)(6) the motion judge must treat as true all well pleaded allegations of the complaint and all reasonable inferences available from those allegations in favor of the plaintiff. Nader v. Citron, 372 Mass. 96, 98 (1977) (authorities collected from the cognate federal rule).
Dismissal is appropriate “only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.” GMAC v. Abington Casualty Co., 413 Mass. 583, 584 (1992), quoting from Nader v. Citron, 372 Mass. 96, 98 (1977), and from Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
A motion judge need not dismiss a claim simply because it alleges a new theory of liability. “]I]t is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader’s suppositions.” New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 30 (1988).
III. Count One for Wrongful Termination in Violation of Public Policy. A. Generally
Massachusetts recognizes a common law claim (sounding in tort) for wrongful termination of an at-will employee. The claimant must plead (1) that the employer discharged her, (2) for reason in violation of a public policy, (3) embodied in a specific provision of law such as a constitutional clause or statute. Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472-75 (1992); Hobson v. McLean Hospital Corporation, 402 Mass. 413, 416 (1988); and DeRose v. Putnam Management Co., 398 Mass. 205, 210 (1986). The identification of a public policy is a matter of law for the court. However the court must locate the policy in a reasonably specific source. See Wright 412 Mass. at 472-75 (policy is lacking in state regulations and in federal and state statutes generally encouraging sound standards of hospital care and management); Kolodziej v. Smith, 418 Mass. 215, 222 (1992) (policy affording religious holiday benefits does derive from state constitutional provision assuring free exercise of religious freedom); Mello v. Stop & Shop Companies, 402 Mass. 555, 560-61 (1988) (no public policy exists in a company’s treatment of internal managerial misconduct reported by the discharged employee but not acted upon by the company).
Massachusetts has recognized an actionably public policy interest in circumstances in which a company terminated the employee for refusal to give false testimony against another employee, DeRose v. Putnam Management Co., 398 Mass. 205, 208-10 (1986); for insistence upon compliance with safety regulations at *324 a hospital, Hobson v. McLean Hospital Corporation, 402 Mass. 413, 416-17 (1988); for cooperation in a governmental investigation of the employer, Flesner v. Technical Communication Corp., 410 Mass. 805, 810-11 (1991); and for reporting to the employer the criminal conduct of another employee, Shea v. Emmanuel College, 425 Mass. 761, 762-63 (1997). Legislation has been the primaiy, but not the exclusive, location of the public policy interest. “While we often look to statutes to find pronouncements of public policy, it is not necessarily true that the existence of a statute relating to a particular matter is by itself a pronouncement of public policy that will protect, in every instance, an employee from termination.” King v. Driscoll, 418 Mass. 576, 583-84 (1994). The reason for the Massachusetts courts’ caution is the concern that a relaxed or enlarged definition of protected public policies would erode the essential character of at-will employment: the right of the employer to discharge the worker freely, with or without reason. Wright, 412 Mass. at 472.
B. Ms. Apessos’ Claim
Under 12(b)(6) canons I must treat as true the allegations of the complaint that MPG fired Ms. Apessos by reason of her August 1, 2000, absence from work to pursue her judicial remedies against domestic abuse by her husband, and' to assist the police in the presentation of evidence (the photographing of her face), and to assist in her own security (the change of locks). The question becomes whether these activities, in whole or in part, embody a public policy sufficiently recognized by specific provisions of law so as to protect Ms. Apessos’ from termination for their pursuit.
First, and most generally, Ms. Apessos was engaged in activity authorized by law. Part One, Article XI, of the Declaration of Rights of the Massachusetts Constitution assures each citizen “recourse to the laws, for all injuries or wrongs which [s]he may receive in [her] person, property, or character. [S]he ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without denial; promptly, and without delay; conformably to the laws.” Access to the courts obviously constitutes a high constitutional value.
More specifically, the Abuse Prevention Act codified as G.L.c. 209A, §5, prescribes a course of judicial relief for a victim of domestic violence (emphasis supplied):
When court is closed for business . . . any justice of the superior . . . court. . . may grant relief to the plaintiff as provided under section four if the plaintiff demonstrates a substantial likelihood of immediate danger of abuse. In the discretion of the justice, such relief may be granted ... If relief has been granted without the filing of a complaint pursuant to this section of this chapter, then the plaintiff shall appear in court on the next available business day to file said complaint.
Here Ms. Apesso allegedly suffered abuse during a weekend when the courts were closed. She obtained an emergency judicial order. To maintain that relief the statute commanded her to appear in court on Monday, August 1, to file a complaint.
Third, her cooperation with the police after her court appearance for photographic preservation of evidence had the general character of cooperation in a law enforcement investigation, Flesner v. Technical Communications Corp., 410 Mass. 805, 811 (1991), and the specific character of implementing the Abuse Prevention Act.
As an equitable circumstance showing respect for the employer’s interest, Ms. Apessos left a voice message with her supervisor on Saturday night; and then called the supervisor directly during Monday.
In sum the constitutional and statutory purposes comprise a specific, explicit, public policy. The termination of an employee for compliance with that public policy would certainly violate it. One other obvious and compelling theme is present. The public policy interests here are primal, not complex: the protection of a victim from physical and emotional violence; and the protection of a victim’s livelihood. The preservation of a livelihood should serve to reduce domestic dependence and its concomitant vulnerability to abuse. The two are connected. A victim should not have to seek physical safety at the cost of her employment.
MPG’s refinements upon the Massachusetts precedents are not valid. The decision of King v. Driscoll, 418 Mass. 576, 584 (1994), does not create a rule that the necessary public policy must concern “the employee’s status as an employee,” i.e., relate to some employment policy value embodied in a law. The public policy interest remains unrestricted by the case law even though common circumstances will often link it to the employment relationship [e.g., the right to assert a workers’ compensation claim; the duty to miss work for jury service; the decision to assist in a law enforcement investigation of the employer).
The decision of Upton v. JWP Businessland, 425 Mass. 756, 757-60 (1997), does not exclude a claim based upon the public policy against domestic violence. The court in Upton concluded only that a wrongful discharge claim did not arise from the termination of a mother who refused to work long hours in order to carry out her child care responsibilities. It did not involve a specific statutory policy. It did not present the traumatic categoiy of personal abuse. It does not stand for the proposition that domestic circumstances can never generate a public policy interest sufficient to trigger liability for wrongful discharge.
IV. Count Two for Breach of the Implied Covenant of Good Faith and Fair Dealing
The same termination may generate both a claim for wrongful discharge and a claim for breach of the implied covenant of good faith and fair dealing. MPG *325 contends that the implied covenant claim is limited to the generic situation in which the employer fires the worker in order to evade the payment of future compensation earned by his or her prior services, le„ the situation framed by the seminal Massachusetts case, Fortune v. National Cash Register Co., 373 Mass. 96, 103-06 (1977). I have examined MPG’s citations for this proposition: Harrison v. NetCentric Corp., 433 Mass. 465, 473-76 (2001); King v. Driscoll, 424 Mass. 1, 6-7 (1996); Smith-Pfeffer v. Superintendent of Walter Fernald State School, 404 Mass. 145, 150 n. 4 (1988); and Mello v. Stop & Shop Cos., 402 Mass. 555, 556 n. 1 (1988). Harrison and King address Fortune-type claims of evasion of future compensation for prior work. Mello addresses both the Fortune-type covenant claim and the public-policy wrongful discharge theory. Smith-Pfeffer considers only a wrongful discharge cause of action. None of these precedents holds, or suggests, that the two claims are mutually exclusive.
In contrast, a separate series of cases collected by Apessos demonstrates that the same termination of an employee can generate both theories of liability. See especially Federici v. Mansfield Credit Union, 399 Mass. 592, 595 (1987) (emphasis supplied):
The plaintiff seeks recovery for breach of the covenant of good faith and fair dealing imposed on at-will employment relationship [citations including Fortune], We have recognized that the termination of at-will employment would give rise to such a claim where the reasons for the discharge was contrary to public policy [citing Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 668 n.6 (1981) as the original expression, and DeRose v. Putnam Management Co., 398 Mass. 205, 208-10 (1986)].
To the same effect are Cort v. Bristol-Myers Co., 385 Mass. 300, 303, 306-10 (1982); Siles v. Travenol Labs, Inc., 13 Mass.App.Ct. 354, 358 (1982); and Grubba v. Bay State Abrasives, 803 F.2d 746, 747 (1987) (dictum) (applying Massachusetts law to a covenant claim of a terminated employee and observing, “Massachusetts does recognize a claim for breach of the implied covenant of good faith and fair dealing when a claimant shows that an employer’s reason for discharge was contrary to public policy”).
CONCLUSION
For these reasons both Counts One and Two state recognized causes of action. In the course of its papers MPG refers to the existence of separate legitimate grounds for the termination. Those may lie ahead as affirmative defenses. For present purposes, the claims of the Complaint survive and go forward.