## Maria Lahbibi Ryan vs. Holie Donut, Inc.

No. 11-P-1403.

Suffolk. March 8, 2012. - October 15, 2012.

Present: Katzmann, Sikora, & Agnes, JJ.

*Practice, Civil,* Motion to dismiss. *Employment,* Retaliation, Sexual harassment, Termination. *Anti-Discrimination Law,* Sex, Termination of employment. *Administrative Law,* Exhaustion of remedies. *Massachusetts Commission Against Discrimination. Superior Court,* Jurisdiction.

In a civil action brought by a plaintiff against her employer alleging common-law wrongful termination in violation of a public policy supporting the report of unlawful conduct to law enforcement authorities (here, that she had been sexually assaulted on multiple occasions by a customer of her employer who was an on-duty police officer), the Superior Court judge properly granted the employer's motion to dismiss, where the claim alleged, in substance, retaliation for the plaintiff's opposition to her employer's tolerance of a sexually hostile work environment, within the operation of G. L. c. 151B, § 4(16A), and therefore fell within the statutory jurisdiction of the Massachusetts Commission Against Discrimination, to which the plaintiff had failed to submit an administrative complaint within 300 days of her termination, as required by G. L. c. 151B, § 5. [635-641]

Civil action commenced in the Superior Court Department on September 2, 2010.

A motion to dismiss was heard by *Geraldine S. Hines*, J.

*Michael A. West* for the plaintiff.

*Nancy A. Serventi* for the defendant.

Sikora, J. By a single-count complaint for damages, Maria Lahbibi Ryan alleged that the defendant, Holie Donut, Inc. (Holie Donut), had fired her because she had complained to Holie Donut and to law enforcement authorities about a pattern of sexual harassment committed at her workplace by a local police officer. She claimed that the retaliatory discharge violated public policy supporting the report of unlawful conduct to authorities and constituted tortious wrongful termination. She appeals from

a judgment of dismissal pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).

A judge of the Superior Court concluded that, in substance, Ryan's complaint alleged a claim of employer retaliation for her opposition to Holie Donut's tolerance of a sexually hostile work environment, as prohibited by the antidiscrimination statute, G. L. c. 151B, § 4(4) (forbidding retaliation) and 4(16A) (forbidding sexually hostile work environment). The judge reasoned that the genuine character of the claim had required submission of an administrative complaint to the Massachusetts Commission Against Discrimination (MCAD) within 300 days of the alleged misconduct as a statutory prerequisite for pursuit of any subsequent remedies, and that omission of the mandatory administrative complaint compelled dismissal of Ryan's common-law action. For the following reasons, we affirm the judgment of dismissal.

*Background.* Because we are reviewing a dismissal pursuant to Mass.R.Civ.P. 12(b)(6), we credit hypothetically the allegations of the complaint. See *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988). In 2003, Ryan began employment with Holie Donut, the holder of a Dunkin' Donuts franchise shop in the city of Chelsea. During the course of her work at the shop, Chelsea police Officer Michael Morabito became a regular customer. The shop was located at 478 Broadway; Officer Morabito's station house was located at 500 Broadway. When he patronized the store, Morabito was in uniform and on duty.

According to the complaint, in 2006 Morabito began a course of conduct in which he (1) made sexually suggestive comments to Ryan, (2) made them in the presence of customers and other employees, (3) made sexual propositions to her, (4) made "sexually intimidating" comments to her, and (5) on one or more occasions "touch[ed] and sexually assault[ed]" her. The management and ownership of Holie Donut were aware of this behavior. Nonetheless, they did not report his conduct to any authorities and did not bar or limit his access to the shop.

In early September of 2007, Ryan informed Holie Donut that she intended to report Morabito's conduct to law enforcement authorities. The management discouraged that course and indicated that any "legal steps" would create "problems" for

Holie Donut and Ryan. Also during the first half of that month, Morabito and at least one other police officer discouraged Ryan from taking any action. Ryan nevertheless "initiated steps to report the conduct" and "steps to protect herself" (unspecified in the complaint).[1] Holie Donut then discharged her.

Ryan brought the present common-law action for wrongful termination on September 2, 2010, almost three years later. Holie Donut moved successfully for dismissal upon the ground that Ryan had failed to submit a prerequisite timely administrative complaint. This appeal ensued.

*Analysis.* 1. *Standard of review.* Review of the allowance of a rule 12(b)(6) motion proceeds de novo. See *Harhen* v. *Brown,* 431 Mass. 838, 845 (2000); *Housman* v. *LBM Financial, LLC,* 80 Mass. App. Ct. 213, 216 (2011). To assess the legal sufficiency of the complaint, we take as true all factual allegations and any reasonable inferences from those allegations. See *Golchin* v. *Liberty Mut. Ins. Co.,* 460 Mass. 222, 223 (2011); *Greenleaf Arms Realty Trust I, LLC* v. *New Boston Fund, Inc.,* 81 Mass. App. Ct. 282, 288 (2012). The factual allegations, as a matter of both plausibility and law, must support an entitlement to relief. See *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 636 (2008). Finally, the presence of allegations or information constituting a conclusive affirmative defense can spell the demise of a complaint. See, e.g., *Bagley* v. *Moxley,* 407 Mass. 633, 637-638 (1990) (application of issue preclusion); *Daniel* v. *Contributory Retirement Appeal Bd.,* 418 Mass. 721, 722 (1994) (failure to exhaust administrative remedies); *Babco Indus., Inc.* v. *New England Merchants Natl. Bank,* 6 Mass. App. Ct. 929, 929 (1978) (applicability of statute of limitations).

2. *Common-law claim of wrongful termination.* Ryan characterizes her cause of action not as a specific allegation of discrimination, but rather as a generic claim of wrongful discharge beyond

---

[1] The complaint does not identify the "authorities" to whom Ryan reported or complained. Other documents in the appellate record recite, without objection by either party, (1) that the Chelsea police department conducted an internal investigation, "sustained" Ryan's complaint, and imposed unspecified discipline upon Officer Morabito; and (2) that Ryan received compensation of $8,121.62 for lost wages under the terms of the statute providing compensation to victims of violent crimes, G. L. c. 258C, administered by the Attorney General.

the coverage of the antidiscrimination provisions of G. L. c. 151B, § 4(4) and 4(16A). She describes Holie Donut's dismissal of her as "retaliation for reporting a crime to law enforcement authorities, consisting of an assault to her person, perpetrated by an on-duty, uniformed and armed police officer while in an 'off limits to the public' area at the plaintiff's place of employment." To the same effect, she argues that "[t]erminating an employee for reporting a crime is not a practice that is expressly forbidden by any section of [G. L.] c. 151B. Such a termination is a common law tort, without a remedy articulated in [c.] 151B."

That view would place her dismissal within the tort of wrongful termination of an at-will employee. Even if "the employer does not gain a financial advantage, an at-will employee has a cause of action for wrongful discharge if the discharge is contrary to public policy." *DeRose* v. *Putnam Mgmt. Co.*, 398 Mass. 205, 210 (1986) (recognizing claim under Massachusetts common law). The public policy must be well defined, important, and preferably embodied in a textual law source. See *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 561 n.7 (1988); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472-476 (1992). A public policy violation arises, at the least, from a termination punishing an employee's assertion of a legally guaranteed right, compliance with a legal requirement, or refusal to commit prohibited conduct. See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-150 (1989). See also *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. at 416-417 (allegations of discharge for enforcing municipal and State law standards of patient supervision constitute claim); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810-811 (1991) (wrongful termination can arise from circumstances in which company discharges employee for cooperation with customs officers' investigation of employer even though employee had no legal duty to cooperate); *Shea* v. *Emmanuel College*, 425 Mass. 761, 762-763 (1997) (discharge of employee for reporting criminal wrongdoing within organization to superiors within organization would constitute actionable violation of public policy).

In short, Ryan insists that the thrust of her complaint is not

her discharge for reporting an experience of discriminatory sexual harassment in the workplace, but instead her discharge for reporting criminal activity (assaultive touching on one or more occasions) by an on-duty police officer to law enforcement officials; and that such a distinctive allegation falls outside the operation of G. L. c. 151B. We respect the contention that disclosure of misconduct, especially by on-duty law enforcement officers, serves a public purpose. However, two considerations defeat that argument in this instance: a realistic assessment of the complaint and the full reach of c. 151B.

3. *Allegations of the complaint.* A full and balanced view of the complaint reveals a story of sexual harassment. The alleged events extended in a pattern for a year or more. They were predominantly verbal and open. "[O]ne or more" acts consisted of "touching and sexually assaulting" Ryan. The complaint does not elaborate upon the details of any physical contact or relate any contemporaneous report of it to law enforcement. It does state that at least one other police officer witnessed or knew about the misconduct, and that Holie Donut management witnessed or knew of the train of events. In full perspective, the assault by offensive touching would constitute the gravest element of a larger pattern of actionable sexual harassment.

4. *Exclusivity of the remedies of G. L. c. 151B.* Section 4(16A) of G. L. c. 151B, inserted by St. 1986, c. 588, § 3, prohibits "an employer, personally or through its agents, to sexually harass any employee." At least since 2002, the MCAD, in its Sexual Harassment in the Workplace Guidelines § III(C) (2002), has advised that "[a]n employer may . . . be liable for the sexual harassment of its employees by certain non-employees, such as customers . . . when the employer knew or should have known about the conduct and failed to take prompt, effective and reasonable remedial action. . . . The greater the employer's ability to control the non-employee's conduct, the more likely it will be found liable for that person's unlawful harassment." In *Modern Continental/Obayashi* v. *Massachusetts Commn. Against Discrimination*, 445 Mass. 96, 105 (2005), the court expressly adopted that standard:[2]

"An employer who passively tolerates the creation of a

---

[2]The court surveyed comparable Federal case law and prescribed as a

> hostile working environment implicitly ratifies the perpetrator's misconduct and thereby encourages the perpetrator to persist in such misconduct. . . . Moreover acquiescence on the part of the employer effectively communicates to the victim of harassment that her employer does not care about the hostile environment in which she must work . . . . [A]n employer who is not part of the solution inevitably becomes part of the problem."

See *Salvi* v. *Suffolk County Sheriff's Dept.*, 67 Mass. App. Ct. 596, 603-608 (2006) (public employer's tolerance of employees' homophobic abuse of coworker creates actionable hostile work environment). If an employer's inaction in the face of sexual harassment and assault of an employee by a customer falls within the operation of § 4(16A), then all the more so would the employer's attempt to suppress the employee's efforts for a remedy. Under this standard, the allegations of Ryan's complaint fall within the operation of § 4(16A).

Section 5 of G. L. c. 151B authorizes complaints to the MCAD for remedies of compensatory damages, civil fines, and restraining orders. The complainant must file within 300 days of the alleged act of discrimination. *Ibid.* Section 9 of c. 151B, as amended by St. 2002, c. 223, § 2, provides that the administrative proceeding "shall, while pending, be exclusive."[3] That section provides also that a claimant "may, at the expiration of ninety days after the filing of a complaint with the [MCAD], or sooner if a commissioner assents in writing," bring a civil action for damages and injunctive relief in the appropriate Superior, Probate and Family, or Housing Court, and incur dismissal of the administrative complaint. In other words, the statute suspends, but does not extinguish, a claimant's other causes of action.

---

standard of liability the test whether the employer reasonably knew of the harassment and whether it made reasonable efforts to remedy it, whether completely successful or not. *Modern Continental/Obayashi* v. *Massachusetts Comm. Against Discrimination*, 445 Mass. at 108-109. In that instance, employees of a subcontractor harassed a female carpenter employed by Modern Continental/Obayashi, the construction general contractor. Modern Continental took reasonable steps, but not completely effective ones, to end the harassment. The court found its efforts reasonable and reversed the administrative decision of the MCAD imposing liability. *Id.* at 118.

[3]The same clause of § 9 adds that "the final determination on the merits shall exclude any other civil action, based on the same grievance of the individual concerned."

Decisions examining the relationship of the G. L. c. 151B administrative complaint to common-law claims and other statutory causes of action involving discrimination have stated that commencement of a timely administrative complaint must precede any such common-law claim created after enactment of the statutory remedies now appearing in §§ 5 and 9. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 586 (1994); *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 512-513 (1985) (specifically observing that statutory rights and remedies predated recognition of common-law tort of wrongful discharge in Massachusetts).[4] Occasional language has described the exclusivity and required exhaustion of the c. 151B administrative complaint process more categorically. See *Sereni* v. *Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 430 (1987) ("In the absence of a timely complaint to the MCAD, there may be no resort to the courts"); *Cherella* v. *Phoenix Technologies, Ltd.*, 32 Mass. App. Ct. 919, 919 (1992) ("Resort to the courts is not available for a complaint of discrimination within the jurisdiction of the MCAD unless the person claiming to have been the object of unlawful discrimination first makes a timely complaint to that agency").

Multiple reasons favor a required first resort to the administrative system afforded by G. L. c. 151B. It furnishes a comprehensive remedial process designed to resolve claims of discrimination with fairness and efficiency for both the complainant and the respondent. Its administrative attributes include a reasonably prompt time limit (300 days) promoting notice to the respondent and the preservation of evidence by all parties, a neutral investigation and probable cause determination, and conciliation services, pursuant to § 5; compensatory damages, civil fines, restraining orders, and the award of reasonable attorney's fees to deserving claimants, pursuant to § 9; and the cumulative institutional judgment of a specialized agency accustomed to distinguishing meritorious from unmeritorious grievances. See *Charland* v. *Muzi Motors, Inc., supra* at 583; *Melley* v. *Gillette Corp., supra*

---

[4]In 1965, the Legislature first broadly prohibited "discrimination in employment because of sex" by addition of "sex" as a forbidden basis for disparate "conditions . . . of employment." St. 1965, c. 379, § 4. The formal recognition of tortious wrongful discharge occurred in *DeRose* v. *Putnam Mgmt. Co.*, 398 Mass. at 210, in 1986.

at 512-513; *Windross* v. *Village Automotive Group, Inc.*, 71
Mass. App. Ct. 861, 863-864 (2008) (purpose of mandatory
submission to MCAD process "is twofold: [1] to provide the
MCAD with an opportunity to investigate and conciliate the
claim of discrimination; and [2] to provide notice to the defend-
ant of potential liability").[5] Those benefits of a calibrated legis-
lative scheme offer distinct advantages against traditional litiga-
tion in trial courts of general jurisdiction upon multiple variant
theories of statutory and common-law wrongdoing. Therefore,
as a jurisdictional prerequisite, the complaint must pass first
through the MCAD portal for the potential advantages of timeli-
ness, efficiency, expertise, and negotiation. The statute maintains
access to judicial review in the Superior Court under the standards
of the Administrative Procedure Act, G. L. c. 30A, § 14(7),
and, as noted, the option of withdrawal from the administrative
process after ninety days for direct access to the courts.

5. *Present circumstances.* The allegations of Ryan's complaint
charge Holie Donut management not only with tolerance of a
customer's continuing sexual harassment of its employee, but
also with deterrence of her efforts to seek help, and finally with
retaliatory discharge of her for those eventual efforts. We
acknowledge the peculiar circumstance alleged in this case: that
the perpetrating customer was a member of the local police
force often in the company of a second officer, and that one or
more members of the police department may have inhibited
management's willingness to assist its employee. However, that
circumstance would not relieve management of the duty to do
so. A retail shop in the shadow of a police station does not pos-
sess an exemption from the duty of a reasonable effort to
safeguard the security and dignity of its employees from sexual
harassment by a police officer. As discussed at oral argument,
an abuse of official authority would more properly intensify the
employer's duty to act.[6]

Because Ryan's grievance fell within the statutory jurisdic-

---

[5]As the court observed in *Melley* v. *Gillette*, 19 Mass. App. Ct. at 512, these
features resemble the benefits attributed to the exhaustion of administrative
remedies and promoted by the legislative requirement of a ninety-day interval
at the agency.

[6]This category of customer would not fit comfortably within the employer's
range of "control," but it would demand the employer's reasonable effort to

tion of the MCAD, she should have submitted an administrative complaint to the agency within 300 days of her retaliatory discharge, and not commenced a common-law action in the Superior Court almost three years later. She was not entitled to bypass the mandatory and preferred procedure. The omission creates a conclusive affirmative defense requiring dismissal.[7]

*Judgment affirmed.*

protect its worker and to fulfil the law. "Few institutions depend as heavily on integrity and credibility for the effective performance of their duties as do police departments." *Local 346, Intl. Bd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. 429, 439 (1984). As recounted above, see note 1, *supra*, the record indicates that the department investigated and sustained Ryan's complaint and imposed discipline.

[7] The motion judge properly relied upon *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. at 512-513, another instance in which a plaintiff omitted the administrative process and filed an action for wrongful discharge in the Superior Court. Here, Ryan's loss of a tort action for compensatory damages did not leave her remediless. Her complaints resulted in departmental action against the officer and in a compensatory recovery under G. L. c. 258C. See note 1, *supra*.