GEORGE D. BRADEN *vs.* TRUSTEES OF PHILLIPS ACADEMY.

Essex.     February 5, 1947. — February 24, 1947.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Agency,* Scope of authority or employment. *Corporation,* Officers and agents. *Contract,* Of employment.

The mere fact that an agreement for employment by an incorporated academy of an assistant comptroller and purchasing agent "for the rest of his life if he behaved himself" was made by the comptroller of the academy would not have warranted a finding that the employee had sustained the burden upon him of proving that the comptroller had ostensible authority to make such an agreement.

CONTRACT.   Writ in the Superior Court dated January 12, 1942.

The case was tried before *Sullivan,* J.

*A. F. Hassett,* (*F. Juggins* with her,) for the plaintiff.

*B. Potter,* (*J. B. Reigeluth* with him,) for the defendant.

WILKINS, J.   This is an action of contract to recover for the breach of an alleged oral agreement for lifetime employment of the plaintiff as assistant comptroller or purchasing agent of the defendant, a charitable corporation chartered by Prov. St. 1780, c. 15, 5 Prov. Laws, 1418.[1] The judge directed a verdict for the defendant (hereinafter called the academy) subject to the plaintiff's exception.

The correctness of that ruling is the sole question before us.   The only witness was the plaintiff, whose testimony was brief.   In June, 1939, he was employed at St. Mark's School, Southboro, as assistant football coach, mathematics

---

[1] "An Act to incorporate an academy in the town of Andover, by the name of Phillips Academy."

teacher, and business manager. He had been there eight years. In that month one Hopper, the comptroller of the academy, telephoned the plaintiff, a former student at the academy, to see whether he would like to become Hopper's assistant. The plaintiff went to Hopper's office at Andover. Hopper said that the plaintiff had a great future at the academy, there being no limit to the salary he might receive or the position he might attain. The plaintiff stated that he was a permanent fixture at St. Mark's School, and had a job there for the rest. of his life if he behaved himself. Hopper responded that they were not offering him any temporary position; that he had better opportunities at the academy because of his background and past connection with the academy; that the job would last the rest of his life if he behaved himself; that they were offering him a position similar to the one he held at St. Mark's School; and that they would pay him $3,600 a year and allow him participation in the academy retirement plan and the use of a dwelling at a stated low rental. Later the plaintiff "accepted the position." On August 1, 1939, he commenced work as assistant comptroller, and a few weeks later Hopper made him purchasing agent as well. About a month after his arrival he had a talk with the head master of the academy, who said that he was glad to see the plaintiff there; that the plaintiff was going to be a big help to them; that he expected the plaintiff to save them a lot of money; and that the plaintiff was well qualified, had a big job to do, and was expected to do the best he could. In the conversation with the head master nothing was said about the terms of his employment. Hopper was the only person purporting to act on behalf of the academy with whom the plaintiff discussed such terms. There was no written contract, and as far as he knew the trustees never took any action purporting to ratify a lifetime contract with him. In September, 1941, the treasurer of the academy discharged the plaintiff. Whether he did so for cause does not appear.

We place to one side the testimony as to the conversation with the head master, because the plaintiff rightly does not contend that there was any ratification of the action of

Hopper.  We assume, without so deciding, that the agreement between the plaintiff and Hopper is to be construed as a contract to employ the plaintiff in the agreed capacity for the duration of his life conditional upon good behavior.  See, as to business corporations, *Revere* v. *Boston Copper Co.* 15 Pick. 351, 361; *Carnig* v. *Carr,* 167 Mass. 544, 547; *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, 251–252; and compare *Campion* v. *Boston & Maine Railroad,* 269 Mass. 579.  Compare *Pisco-Pausata* v. *Oliver Ditson Co.* 276 Mass. 377, 380. There being no evidence of actual authority, the issue is the narrow one whether the comptroller had ostensible or apparent authority to bind the academy by an agreement to employ an assistant comptroller or a purchasing agent for the duration of his life.

The burden was on the plaintiff to prove the existence of such authority.  *James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290 Mass. 331, 333.  A comptroller is an officer appointed to control accounts and to check expenditures. By virtue of his office his authority is restricted to doing those things which are usual and necessary in the performance of his duties.  *M. McDonough Corp.* v. *Connolly,* 313 Mass. 62, 66.  See *Gibson* v. *Contract Water Proofing Co.* 277 Mass. 455.  The evidence does not disclose that the making of a lifetime contract with his assistant was necessary to the performance of Hopper's duties.  See *Massachusetts Hospital Life Ins. Co.* v. *Nesson,* 286 Mass. 216, 222.  Nor does it show that such contracts for services of the character here involved have been customary with similar educational institutions.  There is no suggestion that Hopper, or any predecessor of his, had performed similar acts.  *Beneficial Loan Society of New Orleans* v. *Strauss,* 148 So. 85 (Ct. App. La.).  See *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 532–533; *Hurley* v. *Ornsteen,* 311 Mass. 477, 482.  The record contains no intimation of conduct on the part of the academy which, reasonably interpreted, could have caused the plaintiff to believe that it consented to have the comptroller enter into a lifetime contract on its behalf. See *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 226; Restatement: Agency, § 27.  See also *Rintamaki* v.

*Cunard Steamship Co. Ltd.* 205 Mass. 115, 117; *Sears* v. *Corr Manuf. Co.* 242 Mass. 395; *Hennessey* v. *Cities Service Refining Co.* 282 Mass. 487, 489–490. It does not appear that the academy had a lifetime contract with any officer or employee, much less with the comptroller himself. It should not lightly be implied that the comptroller had apparent authority to bind his principal for the employment of his assistant for a period which might be greatly in excess of his own tenure of office or the terms of office of the academy's managing board. We think that to hold that he did would be contrary to all reason.

The plaintiff has referred us to no case substantiating his position. There is much authority to the contrary in other jurisdictions. We cite a few of the pertinent cases. *General Paint Corp.* v. *Kramer*, 57 Fed. (2d) 698, 703 (C. C. A. 10) (certiorari denied sub nomine *Kramer* v. *General Paint Corp.* 287 U. S. 605). *Starr* v. *Superheater Co.* 102 Fed. (2d) 170, 175 (C. C. A. 7). *Littell* v. *Evening Star Newspaper Co.* 120 Fed. (2d) 36 (C. A. D. C.). *Carney* v. *New York Life Ins. Co.* 162 N. Y. 453. *Clifford* v. *Firemen's Mutual Benevolent Association*, 232 App. Div. (N. Y.) 260, 261; affirmed 259 N. Y. 547. *Kline* v. *Little Rapids Pulp Co.* 206 Wis. 464, 469. See Williston, Contracts (Rev. ed.) § 1652; 13 Am. Jur., Corporations, § 937.

*Exceptions overruled.*