Hyman LOFCHIE
Vs.
TAD TECHNICAL SERVICES
CORPORATION

No. 269

District Court Department
Appellate Division, Southern Division
Trial Court of the
Commonwealth of Massachusetts

May 22, 1981

Stanley J. Spero, counsel for plaintiff
Jeffrey B. Storer, counsel for defendant

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Southern District sitting at Attleboro upon Report from the District Court, Hingham Division and it is found and decided that there was no prejudicial error.

It is hereby ORDERED: That the Clerk of the District Court, Hingham Division make the following entry in said case on the docket of said Court, namely: REPORT DISMISSED.

Opinion filed herewith.

Daniel H. Rider, J
Robert A. Welsh, Jr., J
Charles E. Black, J

## OPINION

BLACK, J. This is an action of contract originally brought in the Middlesex Superior Court by the plaintiff, Hyman Lofchie, against the defendant, TAD Technical Services Corporation (TAD), seeking to recover damages for lost wages allegedly suffered as a result of the defendant's breach of an oral long-term contract of employment. The defendant answered by denying that there had been any long-term employment contract as alleged by the plaintiff, and further raised the affirmative defense of the statute of frauds (G.L.c. 259, sec. 1). It further answered by stating that any contract that may have existed had been fully performed. The case was remanded to the Second Plymouth Division (Hingham), District Court Department, for trial. The court found for the plaintiff in the sum of six thousand eight hundred thirty-eight dollars (6,838.00), with interest in the amount of six hundred twelve dollars and thirty-seven cents ($612.37), and costs of twenty-one dollars and fifty-five cents ($21.55).

At trial, there was evidence tending to show, and the court found that the plaintiff, Hyman Lofchie, was employed by Francis Associates in Cambridge as a H.V.A.C. Design Engineer. He had been employed there for approximately one year and his weekly salary was two hundred forty ($240.00) dollars per week for a thirty-two hour week. He also received additional benefits in the form of family health insurance, two weeks paid vacation, ten (10) holidays off and profit sharing plan.

In 1977, Hyman Lofchie submitted a resume to TAD, a Massachusetts corporation doing business as an "employment contracting firm," which directly employed various personnel who were then assigned their place of employment. The employees would receive their paychecks from TAD, which would bill the place where the services were performed for the appropriate amount. In May of 1978 one Mark Hecht, an employee, but not an officer of TAD, called Hyman Lofchie to determine whether he would be interested in a position as a H.V.A.C. Design Engineer with a Boston firm, to which inquiry Lofchie responded affirmatively. Hecht called back a few days later and stated that he had a position available at eleven dollars ($11.00) per hour with Metcalf and Eddy, Inc., but Lofchie stated that the salary was inadequate. He further advised Hecht that he wanted to work only four (4) days per week. Hecht called later to inquire when Lofchie would be available to start; that he had employment for Lofchie for six (6) months to one (1) year. Lofchie wanted to be absolutely certain that he had a solid commitment with TAD before giving up his position with Francis Associates. Consequently, one Fred Bicoules, Vice President of TAD, informed Lofchie that he had

contacted Metcalf and Eddy, a Boston firm, that Lofchie would be paid twelve (12) dollars per hour for a four (4) day week, and that he was needed immediately. Lofchie commenced employment at Metcalf and Eddy on May 22, 1978.

Lofchie worked three (3) days the first week of his employment with Metcalf and Eddy, and was off on Friday. The following week, Monday was a holiday, and he worked Tuesday through Thursday and returned to work on Monday of the third week, at which time he was informed that his services were no longer needed. Lofchie went to the Head of Personnel at Metcalf and Eddy, who informed him that Metcalf and Eddy had notified TAD that the employment was only for two weeks. Lofchie called Bicoules to determine what had happened, and was advised that TAD had no position for him.

Lofchie was unable to find employment and received unemployment compensation of one hundred fifteen ($115.00) dollars per week until his child was born (July 18, 1978), at which time his unemployment was increased to one hundred twenty-one ($121.00) per week. He was unemployed until he was given work by the Commonwealth of Massachusetts for five (5) weeks at three hundred thirty ($330.00) dollars per week, on December 12, 1978.

The court found that Bicoules, as Vice President of TAD, had the corporate authority to employ Lofchie and that it was within the scope of that authority to offer Lofchie employment for six (6) months to a year. The court further found that Lofchie and TAD had entered into an oral employment contract, by the terms of which Lofchie was to receive twelve ($12.00) dollars per hour for a four day week for a period of six months to a year; that TAD had breached the contract in that Lofchie had been terminated after two (2) weeks of employment. The court also concluded that the contract could have been fully performed within one year and was not, therefore, within the statute of frauds.

The court determined that Lofchie had lost six (6) months income, and that he was entitled to two hundred sixty-three ($263.00) dollars per week (the difference between three hundred eighty-four ($384.00) dollars per week and the one hundred twenty-one ($121.00) dollars per week unemployment compensation). The total finding was for six thousand eight hundred thirty-eight ($6,838.00) dollars, plus interest and costs.

The defendant submitted the following requests for rulings, all of which were denied by the trial judge, reference being made to his findings of fact:

"1. The contract that the plaintiff alleges he made with the defendant TAD is unenforceable because it is not in writing as required by G.L. c. 259, sec. 1.

2. The contract that the plaintiff alleges he made with TAD is unenforceable because it was not made on behalf of TAD by TAD's authorized agent.

3. The plaintiff has failed to sustain his burden of proving that his alleged contract with TAD was made by an authorized agent thereof."

The sole issue presented by this appeal is whether the trial judge erred in finding that Bicoules had the authority, actual or apparent, to offer Lofchie a position for six (6) months to a year with TAD. We find no error on that finding.

It is undisputed that TAD's business was providing the services of temporary employees, such as engineers, designers and draftsmen to clients for assignment of various lengths of time, and that Bicoules was a Vice-President of TAD. Based upon the evidence reflected in the report, it would seem as though Bicoules lacked the actual authority to guarantee employment for any specific length of time. Did he, then, have apparent authority to do so? We think that the trial judge was correct in concluding that he did.

From the report, it is clear that Lofchie

was very concerned about leaving his employment with Francis Associates and wanted a guarantee of at least six months to a year employment before agreeing to accept TAD's offer. Hecht testified that he knew that Lofchie was not interested in any short-term employment and that it was critical to reaching the agreement with Lofchie that the employment be long-term. Apparently, based upon his conversations with Hecht, Lofchie was still unconvinced. Bicoules then entered the scene as a Vice President of TAD and convinced Lofchie that the position with Metcalf and Eddy was for at least six months and perhaps up to a year and that he was needed at once.

Lofchie could have reasonably inferred from his dealings with Hecht that Hecht was unable to give the necessary guarantee of six months employment, and that when Bicoules contacted him, as a Vice President of TAD, he was a person possessing the necessary authority to guarantee at least six months of employment. Generally, according to the general doctrine of apparent authority or ostensible authority, a principal's liability or responsibility to a third person for the acts or contracts of his agent is not limited to such acts or contracts of the agent as are expressly or impliedly authorized by the principal; the principal is also responsible for acts reasonably appearing to the third person to be within the authority delegated to the agent (see 3 Am.Jur.2d Agency sec. 73). The authority of an agent is a question of fact, the answer to which depends upon the inferences to be drawn from a wide variety of circumstances relating to the conduct of the apparent agent, and whether the circumstances are such to warrant persons dealing with him, in the exercise of reasonable prudence and discretion to believe he has the authority to represent the principal in regard to the transaction in question (**Costonis v. Medford Housing Authority,** 343 Mass. 108 (1961), **Baldwin's Steel Erection Co.,** **Inc. v. Champy Construction Company, Inc.,** 353 Mass. 711 (1968) ). To create apparent authority, the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create that result. As in the case of authority, apparent authority can be created by appointing a person to a position which carries with it generally recognized duties. (see, Restatement 2d: Agency sec. 27).

It is clear that Lofchie believed that Bicoules had the authority to guarantee him at least six months employment, and considering the nature of TAD's business, the sequence of events leading up to Bicoules' involvement in negotiations with Lofchie and Bicoules position as Vice President of TAD, we conclude that the totality of these circumstances were ample to warrant a person of reasonable prudence and discretion to believe that Bicoules had the authority to make a guarantee of employment for a minimum of six months. The facts and circumstances of this case are clearly distinguishable from those cases where the courts have declined to find apparent authority on the part of various persons to guarantee lifetime employment. (**Braden v. Trustees of Phillips Academy,** 321 Mass. 53 (1947), a "permanent job" (**Porshin v. Snider,** 349 Mass. 653 (1965), or employment until qualified for a pension (15 yrs.), (**Rydman v. Dennison Mfg. Co.,** 4 Mass.App.Ct. 800 (1976), aff'd, 373 Mass. 885 (1977) ).

Accordingly, the report is dismissed.

**Daniel H. Rider, Justice**
**Robert A. Welsh, Jr., Justice**
**Charles E. Black, Justice**

This certifies that this is the opinion of the Appellate Division in this cause.

**Patricia D. Miller, Clerk**