**David FRANKINA, Plaintiff,**

v.

**FIRST NATIONAL BANK OF BOSTON, Defendant.**

**Civ. A. No. 91–11495–C.**

United States District Court,
D. Massachusetts.

Sept. 1, 1992.

Denise M. Leydon, Weston, Patrick, Willard & Redding, Boston, Mass., for plaintiff.

Robert B. Gordon, Richard P. Ward, Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is an action brought by David Frankina ("Frankina") against his former employer, the First National Bank of Boston ("the Bank"), alleging that the Bank unlawfully discriminated against him because of his age by terminating him in connection with a May, 1989, reduction in force ("RIF"). Frankina's seven-count amended complaint seeks statutory relief under the Massachusetts Fair Employment Practices Act, Mass.Gen.L. ch. 151B (Count I), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (Count II), and the Massachusetts Equal Rights Act, Mass. Gen.L. ch. 93, § 103 (Count VII). The complaint also alleges common law claims of wrongful termination (Count III), breach of contract for lifetime employment (Count IV), breach of contract for preferential hiring (Count V), and breach of the implied covenant of good faith and fair dealing (Count VI).

This matter is before the Court on the Bank's motion for summary judgment on all Counts. For the following reasons, this Court concludes that the bank's motion for summary judgment should be granted on all Counts.

### I.

For the purpose of this motion, the relevant facts are summarized as follows. Unless otherwise noted, the facts are undisputed.

In April 1962, Herbert Ericson offered Frankina a job as a security cage clerk, which Frankina accepted. There was no written employment contract between the Bank and the plaintiff prescribing any fixed term of employment. At the time of hire, according to the plaintiff, Ericson told plaintiff that he had a job for life so long as he did not commit a criminal act against the Bank. The plaintiff also alleges that Ericson noted that the Bank had never laid off any employees in its nearly 200 year history. Plaintiff worked at the Bank in various capacities for twenty-seven years, most recently in the Control Unit of Treasury and Banking Services's ("TBS") Capital Asset Services Group as a senior control specialist.

In 1989, in response to the prior year's net loss of thirty-six million dollars in its

TBS operation, the Bank undertook to reduce costs and improve efficiency. To address operational shortcomings, such as inefficient workflow and duplication of functions, the Bank completely reorganized the Banking Services division of TBS. As a consequence, the Bank implemented a RIF throughout calendar year 1989, which eliminated 119 positions, including the plaintiff's, and allowed several hundred vacancies to remain unfilled.

The plaintiff's position was evaluated as part of the RIF in the following manner. Thomas Keane, age 54, senior operations manager of the Capital Asset Services Department, determined that two of the seven positions in the Control Unit in which plaintiff worked should be eliminated. Based on his own personal knowledge of the work performance of those in the unit and the most recent performance evaluations of the seven employees, Keane selected Edward McFarland (age 35) and the plaintiff (age 47) for termination.[1] He selected McFarland because he had the least amount of Bank experience, was new to the unit, and did not appear to have the requisite skills to carry out the duties in the reconfigured organization. In selecting the plaintiff, Keane concluded that plaintiff was a weak performer who required close supervision by management, had relatively poor work habits, experienced difficulty in completing assigned tasks, and would thereby be less qualified to perform the duties and responsibilities that would be expected of employees in the reconfigured organization.

In addition to reviewing plaintiff's performance record at the Bank, Keane compared it to the others in the unit. As noted by the defendant, plaintiff's colleagues each received commendable performance ratings in the years preceding 1989. Keane further asserts that he did not consider plaintiff's age to be relevant in selecting him as one of the two terminated employees, nor did the Bank instruct or otherwise suggest to him that older employees

should be selected for layoff, or that younger ones should be retained. In his affidavit, he stressed that his "decisions were based strictly on a judgment as to the relative qualifications and skills of [the Control Unit's] employees." Keane Affidavit at ¶ 16.

Despite mixed performance reviews in the Bank's formal appraisal system, plaintiff disputes that he was terminated for poor performance and claims that he was a loyal employee who performed his duties satisfactorily and received merit increases and promotions during his many years of service. In support, plaintiff admits to only two "relatively poor" evaluations in these years of service. Plaintiff also disputes that age and years of service were not a factor in his termination. He asserts that he was terminated because of his age, as he was the oldest control specialist in his area with the most years of service with the Bank. Plaintiff concedes that one co-employee in his area, Millerick, was older than him at the time of the termination, but claims that Millerick was in a supervisory role and did not perform control specialist functions. As further evidence of age discrimination, plaintiff claims that other terminated employees in the RIF were also the oldest, and had the most years of service, in their departments, despite satisfactory job performances.[2]

Following plaintiff's termination, the Bank initially redistributed plaintiff's duties to those employees remaining in the group. Plaintiff notes that all the employees to whom his work was reassigned were younger than him, except for Millerick, who, as noted above, allegedly did not perform the duties of a control specialist. The Bank states that, after the completion of the reconfiguration in TBS, all of plaintiff's duties were reassigned to other areas. The Bank claims that plaintiff's position has been functionally eliminated, and no one has been hired as a senior control or control specialist in Capital Asset Services

1. The five other employees in the unit and their respective ages are as follows: Richard Romasco (41), Carol Dzedulonus (41), Steven Heath (37), Robert Millerick (49), and Theresa Turina (31).

2. The plaintiff makes several other contentions to support his age discrimination claim, which will be discussed in detail in § III.

since his termination. Plaintiff has no knowledge that the Bank subsequently hired someone else to fill his position.

After hearing of his termination in May 1989, plaintiff participated in the Bank-sponsored RIF program, which included professional job search assistance. He also received severance pay for twelve months. Plaintiff alleges that a Bank personnel representative, Gerald Demone, told him during his exit interview that he would receive preferential treatment in the rehiring process. Plaintiff admits, however, that during this meeting he received a RIF policy manual that included a statement that terminated employees would not be given preference in rehiring. He nonetheless asserts that Demone told him that his application, as well as the applications of other terminated employees, would receive preference in the internal posting procedure at the Bank. He claims that his resume would be placed in a special folder of RIF'd employees, in which managers at the Bank would look to fill positions prior to posting the job.

The Bank claims that plaintiff was neither promised that he would be re-hired nor assured of receiving any preference over other applicants. The Bank claims that the plaintiff was given a packet of written policy materials which set forth the applicable benefits and procedures. With respect to an internal job search for terminated employees, the policy stated, "[i]t is not the intent of this policy to offer these employees any preferential treatment over other internal or external candidates." The Bank claims that the alleged preference to which plaintiff refers was a procedure whereby his resume would be placed in a folder with the resumes of other laid-off employees for review by Bank managers or recruiters. In accordance with this procedure, Demone requested that plaintiff submit a resume for this file, and plaintiff complied.

Since termination of Frankina's employment, Bank records indicate that he has applied for two posted positions at the Bank. In both instances, another internal candidate was chosen to fill the position. The Bank claims that the chosen candidates demonstrated more relevant skills for the position and had stronger records of performance than plaintiff. One was fifty-two years of age, the other thirty-four. As for plaintiff's assertion that he was not rehired because of his age, the Bank asserts that age was not a factor in the selection process for rehiring laid off employees. Instead, it claims that re-employment was based strictly on an assessment of the applicant's relative qualifications.

In contrast to the Bank's records, plaintiff claims that during the six-month period after his layoff, he applied for fifty-nine jobs at the Bank, some of which he had performed in the past, but did not receive any offers. With respect to these positions, plaintiff has no knowledge whether the Bank ever filled these position, or the qualifications or age of the people that may have filled the positions. He further asserts that he relied on the representations of Demone that he would be given preference in re-employment with Bank, and although he made attempts to find work outside the Bank during that six-month period, he concentrated his efforts on getting rehired at the Bank.

## II.

According to Fed.R.Civ.P. 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 25, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once this burden has been met, the opposing party must come forward with enough evidence

to demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. As in any summary judgment motion, the Court must review the record in the light most favorable to the non-moving party, in this case, the plaintiff. *J.I. Corp. v. Federal Ins. Co.*, 920 F.2d 118 (1st Cir.1990).

Applying this standard, this Court will examine the relevant law and the facts of the instant case. As noted above, the defendant in the instant case moves for summary judgment on all seven Counts in the complaint. Each of these Counts will be discussed in the following sections.

## III.

Under Counts I, II and VII, plaintiff claims that the Bank unlawfully discriminated against him on the basis of his age by discharging him and subsequently refusing to rehire him. In Count I, plaintiff seeks statutory relief under the state age discrimination statute, the Massachusetts Fair Employment Practices Act, Mass. Gen.L. ch. 151B. Count II invokes protection under the state statute's federal counterpart, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The third Count, Count VII, claims age discrimination under the Massachusetts Equal Rights Act, Mass.Gen.L. ch. 93, § 103. Because courts apply the same analysis to state and federal discrimination claims, this Court will analyze these claims collectively. *See White v. Univ. of Massachusetts*, 410 Mass. 553, 557, 574 N.E.2d 356 (1991); *see also McKenzie v. Brigham & Women's Hosp.*, 405 Mass. 432, 438, 541 N.E.2d 325 (1989) (plaintiff's claims under M.G.L. ch. 151B and 42 U.S.C. § 1981, on which M.G.L. ch. 93, § 103 is explicitly patterned, are substantively identical).

■ Under such claims, both parties are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). Initially, a plaintiff must make a prima facie showing of discrimination. *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir.

1991). This prima facie demonstration requires that:

(i) the plaintiff was over the age of forty, (ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer took adverse action against him, and (iv) the employer sought a replacement with roughly equivalent job qualifications. . . .

*Id.* at 823. Applying this four-part test to the instant case, plaintiff's complaint and supporting affidavits are sufficient to meet this prima facie showing. Plaintiff indicated that (i) he was forty-seven at the time of termination, (ii) he was a loyal employee who performed his duties satisfactorily and received merit increases and promotions during his many years of service, (iii) he was terminated, and (iv) that all other control specialists to whom his work was reassigned were younger than him. Even though two of plaintiff's contentions are disputed by the Bank, that his work was adequate and that he was replaced, this Court is obligated to view the evidence most favorably to the plaintiff and thereby finds that he has met his initial burden of a prima facie showing.

■ Since plaintiff has met this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision. *Id.* at 823. In the instant case, the Bank has explained that growing financial losses and inefficiencies in TBS necessitated a restructuring of the department. The Bank devised a plan to consolidate several divisions, redesign the workflow of the department, and rid the department of duplication. One of the ways the Bank accomplished this was by implementing a RIF of 119 employees, of which plaintiff was one. The Bank further describes the process of selecting which positions would be terminated within Frankina's unit. Based on the most recent performance review and personal knowledge of plaintiff's work habits, Keane selected plaintiff as one of two employees to be terminated in his unit. Keane claims that plaintiff was a weak performer, requiring close supervision. Because of these performance problems, the Bank selected Frankina for termination. Thus, the

Bank has articulated two corresponding reasons for plaintiff's dismissal: a reorganization of the Bank resulting in a RIF, and plaintiff's poor job performance. The Bank therefore has undoubtably met its burden of articulating a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff.

As the defendant has met its burden, the presumption of the plaintiff's original prima facie showing disappears, and the burden shifts back to the plaintiff to demonstrate that the employer's stated reason for terminating his employment is actually a pretext for age discrimination. *Id.* at 823; *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1011 (1st Cir.1979). At this point, "the ultimate question becomes whether, on all the evidence of record, a rational factfinder could conclude that age was a determining factor in the employer's decision." *Mesnick,* 950 F.2d at 825. The inference of intentional discrimination due to age must rest on more than conjecture, or by simply refuting or questioning the defendant's articulated reason, however. *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987). In order to prevail, the plaintiff must provide some "minimally sufficient" evidence, either direct or indirect, to show pretext and discriminatory animus. *Id.* In an effort to meet this burden, the plaintiff has offered several factual bases for claiming that unlawful considerations of his age caused his termination from the Bank. Each of these, as noted in Plaintiff's Rule 56.1 Statement of Disputed Material Facts at 6–7, will be discussed in turn.

First, Frankina asserts that he was the oldest person performing his duties, and the employee with the most service, in the seven-employee Control Unit. Defendant disputes this assertion, claiming that co-worker Millerick was forty-nine at the time of the RIF. Plaintiff explains that Millerick was a temporary member of the unit and was a supervisor, not performing the same control specialist position as plaintiff. For the purposes of this motion, viewing the evidence in the light most favorable

to the plaintiff, this Court will assume that Frankina is the oldest control unit specialist in the unit. However, this evidence alone is insufficient to prove an inference of age bias or rebut the legitimate reasons for termination articulated by the Bank. Frankina concedes in his deposition that he has no knowledge of the selection process for determining who in the unit would be terminated because of the RIF. Further, plaintiff fails to explain why, if age was a determining factor in the Bank's decision, the other employee selected for the RIF was the second youngest in the unit. In fact, the only evidence that the plaintiff does provide to the Court to demonstrate that his age was a determining factor in his termination is his refutation of the Bank's characterization of him as a poor performer. As the First Circuit Court of Appeals has held, however, "[m]erely casting doubt of the employer's articulated reasons does not suffice to meet the plaintiff's burden of demonstrating intent ..." *Id.* at 15. Thus, evidence of plaintiff's age, by itself, is insufficient to support an inference that the Bank terminated him because of his age.

As a second basis of claiming pretext and animus, plaintiff asserts that other terminated employees personally known to him were the oldest employees, with the most years of Bank service, in their departments. In support of this argument, Frankina has submitted affidavits from six of these individuals, each stating that the employee was a satisfactory employee and the oldest, or one of the oldest, employees in his or her unit.[3] In light of the fact that each of the other affiants were selected for termination by different managers than plaintiff, and the small sample of employment decisions cited (seven out of 119), the plaintiff's evidence is insufficiently probative to permit a rational inference that plaintiff's termination was motivated by age bias. *See Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990); *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 804 (9th Cir.1987). As noted

---

**3.** In at least two of the affidavits, the affiants concede that the management in the area may

have been older than them. Goldman Affidavit at ¶ 2; Fishman Affidavit at ¶ 2.

in an analogous age discrimination case stemming from the same RIF at the Bank, "[w]ithout more, these affidavits corroborate what was undisputed: that the members of the protected class were terminated as part of the RIF. They do not support an inference of age animus sufficient to meet plaintiff's burden." *Goldman v. Bank of Boston*, No. 91–11494–Z, 1992 WL 142031, at *3 (D.Mass. June 8, 1992).

Third, the plaintiff states that, in 1989, the Bank disbanded the Quarter Century Club, a social organization specifically and uniquely relating to the older, long-term employees who have worked at the Bank twenty-five plus years. Frankina asserts that this evidences the negative corporate attitude of the Bank towards its older employees. The undisputed evidence establishes, however, that the Bank ceased funding this employee organization as part of a widespread economic strategy to reduce costs and discretionary overhead. Furthermore, the Bank notes that the cost-cutting measure had nothing to do with the age of the members involved in the group. The conclusion that plaintiff has reached regarding the discontinuance of funding for the group is supported by no evidence and is based merely on conjecture. *See id.* at *2 (discontinuance of Quarter Century Club as evidence of pretext and age animus in age discrimination claim is insufficient).

As a fourth basis, the plaintiff notes two features of the Bank's revised retirement plan in 1989 that he claims illustrate the Bank's intentional discrimination based on age. As evidence of this discrimination, the plaintiff points to a provision in the plan which states that an employee who is terminated at age fifty-five is eligible for only forty-seven percent of the pension amount for which she would be eligible if she had worked until age sixty-five. Second, Frankina claims that the percentages of salary contributed to an employee pension plan under the new cash balance account system decreased after the length of service with the Bank reached thirty-five years. Although the plaintiff provides the Court with the relevant passage in the revised Bank retirement plan, this evidence is meaningless without the context of the prior retirement plan or a comparative analysis of the two plans. Without such evidence, no rational factfinder could find an inference of age discrimination. Supplemental evidence later submitted by the plaintiff does not help demonstrate this inference either. This evidence, a memorandum from the Bank's president outlining the new plan's benefits, explicitly states that the new pension benefits make the program more meaningful to all employees "regardless of age." The memorandum also indicates that the new plan actually protects older employees in several ways, including a benefits safeguard of allowing the employee to choose between the old and new plans upon leaving the Bank, whichever provides a greater benefit to the employee. Without rebuttal evidence explaining to the Court that these changes were indeed harmful to older employees, the evidence plaintiff has provided does not support the inference of any age discrimination on the part of the Bank. *See id.* (court found no inference of age discrimination in Bank's 1989 revised retirement plan in analogous age discrimination case against the Bank).

Fifth, the plaintiff appears to suggest that there is evidence of age bias to be found in statistics of the RIF and the rehiring process. Defendant argues that plaintiff's figures prove nothing, and reflect a profound misunderstanding of how to derive probative information from statistics. First, plaintiff asserts that the original list of potential employees to be included in the May 1989 RIF included ninety-five employees, forty-one over the age of forty and fifty-four under the age of forty. He then claims that eight people over age forty and four employees under forty were later added to the final list of 119 employees. Without evidence of the relative percentages of older and younger employees within the TBS workforce from which termination selection was made, the plaintiff has not established that the Bank terminated older employees at a disproportionate rate. Although these data could reflect an inference of age discrimination by the Bank, without the necessary accompanying infor-

mation, the plaintiff's statistics lack any weight. *Connell v. Bank of Boston,* 924 F.2d 1169, 1177 (1st Cir.1991), *cert. denied,* — U.S. —, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991); *Goldman,* 1992 WL 142031, at *2. Plaintiff further notes that, of the twenty-one laid off employees who were subsequently re-hired by the Bank, only five were over the age of forty. However, without any evidence regarding the age and number of RIF'd employees who re-applied for Bank positions, the fact that only five employees were rehired by the Bank lacks any meaning. *Connell,* 924 F.2d at 1177; *Goldman,* 1992 WL 142031, at *2.

As a sixth and last basis, plaintiff claims that the Bank's stated motivation in instituting the RIF, reducing costs, would be most effectively accomplished by eliminating older, long-term employees such as Frankina. Plaintiff maintains that the Bank accomplished its goal of reducing costs by terminating older, more expensive employees. However, plaintiff offers no evidence to support that older employees were more expensive to retain than younger employees or that the Bank terminated a disproportionate number of older employees. The only evidence upon which the plaintiff relies, Defendant's Answers to Interrogatories at 5, merely explains the Bank's reasons necessitating the RIF that mirror the two-fold justification noted above: a restructuring of the department due to economic necessities, and the selection of plaintiff due to poor work performance. Thus, the plaintiff's contention that the Bank would most effectively accomplish its goal of maximizing cost savings by terminating the older employees is based merely on speculation by the plaintiff, not on any evidence he provides.

As the foregoing indicates, Frankina's evidence is insufficient, both individually and collectively, to show discriminatory animus and pretext in his termination. Based on all the evidence of record, a rational factfinder could not conclude that age was a determining factor in the employer's decision. Therefore, this Court grants summary judgment for the Bank for Counts I, II, and VII.

## IV.

In Counts VI and III, plaintiff argues that the Bank breached his at-will employment contract by terminating him because of his age. In Count VI, the plaintiff claims that the Bank breached its duty of good faith and fair dealing by terminating him and replacing him with a younger employee. In Count III, Frankina alleges that the Bank wrongfully terminated him without cause in violation of the public policy against age discrimination. As discussed in turn, both claims fail to state a viable cause of action under the relevant Massachusetts law.

Massachusetts employers are free to terminate an at-will employee at any time and for any or no reason. *See Fortune v. National Cash Register Co.,* 373 Mass. 96, 100–01, 364 N.E.2d 1251 (1977); *Fenton v. Federal St. Bldg. Trust,* 310 Mass. 609, 612, 39 N.E.2d 414 (1942). In at least two instances, Massachusetts courts have recognized exceptions to this general rule. First, in some at-will terminations, the courts will imply a covenant of good faith and fair dealing to impose liability on the employer. *Fortune,* 373 Mass. at 100–05, 364 N.E.2d 1251. Massachusetts courts have narrowly construed this exception, however, holding that the absence of good faith in terminating an at-will employee, without more, is not sufficient to trigger liability. *Gram v. Liberty Mut. Ins. Co.,* 384 Mass. 659, 671, 429 N.E.2d 21 (1981). Further, Massachusetts courts have only imposed liability under this exception where employers would unjustly benefit financially by depriving the employees of future compensation earned for past services. *See id.; Fortune,* 373 Mass. at 102, 364 N.E.2d 1251. The courts have distinguished between terminations affecting the "loss of future wages for *past* services," which is bound by the duty of good faith and fair dealing, and "the loss of future income for *future* services," which is not so bound. *Gram,* 384 Mass. at 672, 429 N.E.2d 21 (emphasis added). For example, in *Fortune,* the Supreme Judicial

Court imposed liability on a company for breaching the duty of good faith and fair dealing for discharging a salesman who had earned a large commission for which he had not yet been compensated at the time of termination. *Fortune*, 373 Mass. at 100–05, 364 N.E.2d 1251. Thus, the first exception, good faith and fair dealing, is very narrow and fact specific.

■ The plaintiff in the instant case raises this first exception in Count VI, breach of contract due to bad faith. Plaintiff asserts that the Bank breached the duty of good faith and fair dealing by telling the plaintiff that his job had been eliminated when it had not. Additionally, plaintiff claims that the Bank filled the position with a younger employee. Although it would suggest bad faith to discharge the plaintiff in this manner, the court in *Gram* instructs that bad faith alone does not trigger liability under the good faith exception. As noted above, only those terminations that deprive a discharged employee of earned compensation fall within this narrow exception. The plaintiff in the instant case relies on assertions of bad faith in his termination, not on evidence of his employer's deprivation of her past earnings. With no such evidence in the supporting pleadings, affidavits, and deposition, this Court concludes that the good faith and fair dealing exception is not available to the plaintiff in the instant case.

■ As a second exception, Massachusetts courts have imposed liability on an employer for terminating an at-will employee if the method of termination is in violation of a clearly established public policy. *See Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 416, 522 N.E.2d 975 (1988); *DeRose v. Putnam Management Co.*, 398 Mass. 205, 210, 496 N.E.2d 428 (1986); *Gram*, 384 Mass. at 668 n. 6, 429 N.E.2d 21; *Glaz v. Ralston Purina Co.*, 24 Mass. App.Ct. 386, 389–90, 509 N.E.2d 297 (1987), *rev. denied*, 400 Mass. 1106, 513 N.E.2d 1289 (1987). For example, Massachusetts courts have created a common law cause of action for violations of public policy in the following instances: "asserting a legally guaranteed right (e.g., filing workers' com-

pensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith–Pfeffer v. Superintendent of Walter E. Fernald State Sch.*, 404 Mass. 145, 149–50, 533 N.E.2d 1368 (1989). Courts are hesitant, however, to create a new common law cause of action, only doing so when there is "no other way to vindicate such public policy." *Melley v. Gillette Corp.*, 19 Mass. App.Ct. 511, 512, 475 N.E.2d 1227 (1985), *aff'd*, 397 Mass. 1004, 491 N.E.2d 252 (1986). Thus, where the legislature has already provided a remedy by enacting a comprehensive remedial statutory scheme, Massachusetts courts have not created a new, duplicative common law cause of action for a violation of the public policy. *Melley*, 19 Mass.App.Ct. at 513, 475 N.E.2d 1227; *Grubba v. Bay State Abrasives, Div. of Dresser Indus., Inc.*, 803 F.2d 746 (1st Cir.1986); *Mello v. Stop & Shop Cos.*, 402 Mass. 555, 524 N.E.2d 105 (1988). In *Melley*, the Massachusetts Appeals Court declined to create a new common law cause of action for age discrimination, by carving out a public policy exception to the at-will termination rule, because a new cause of action would interfere with the existing remedial statute protecting against age discrimination. *Melley*, 19 Mass.App.Ct. at 512, 475 N.E.2d 1227.

■ In the instant case, the plaintiff asserts this second exception in Count III. Plaintiff claims that the Bank wrongfully terminated him without cause due to his age and did not eliminate the plaintiff's position as claimed, thereby violating the public policy against age discrimination. He further claims that the consideration of his seniority status, and the financial savings generated by terminating long-term employees prior to retirement, was improper as against public policy. As noted above, the public policy against age discrimination is already comprehensively addressed by a remedial legislative scheme, M.G.L. ch. 151B. *See Melley*, 19 Mass. App.Ct. at 512–13, 475 N.E.2d 1227. Where the legislature has already provided a comprehensive remedial statutory

scheme, Massachusetts courts will not create a new cause of action for a violation of the public policy. *Id.* at 513, 475 N.E.2d 1227. Following *Melley*, this Court will not create a new common law cause of action to redress plaintiff's grievances.[4]

For the foregoing reasons, this Court grants defendant's motion for summary judgment of Counts VI and III.

### V.

Frankina also asserts, in Count IV of his complaint, that the Bank breached a contract guaranteeing him "employment for life." Plaintiff claims that Herbert Ericson ("Ericson"), a personnel representative for the Bank, verbally assured plaintiff that he could have a job for life with the Bank as long as he did not commit a criminal act against the Bank. Ericson also allegedly told plaintiff that the Bank had never laid off any employees in its nearly 200 years of existence. Defendant counters, *inter alia*, that Ericson had no authority to bind the Bank to a contract of lifetime employment. As discussed below, this Court concurs with the defendant.

■ Under Massachusetts law, a plaintiff has the burden of showing that the alleged lifetime employment was within the express, actual authority of the corporation's agent. *Rydman v. Dennison Mfg. Co.*, 373 Mass. 855, 366 N.E.2d 763 (1977). The Bank claims that there is no genuine issue as to Ericson not having actual authority to hire employees for life. In support of its motion, the Bank asserts that "[a]s a personnel representative, Herbert Ericson was authorized to participate in certain Bank of Boston hiring decisions, but had no actual authority to hire employees for terms of years or to enter into extended employment contracts on behalf of the Bank." Defendant's Undisputed Facts at ¶ 7. This Court finds that the Bank has thereby met its burden in demonstrating the absence of a genuine issue of material fact.

As the Bank has met its initial burden, the plaintiff must come forward with enough evidence to demonstrate that there is a genuine issue of material fact for trial. In the instant case, plaintiff has not met this burden. Frankina has not provided the Court with any evidence indicating that Ericson had any express authority to hire him for life. In fact, plaintiff concedes that Ericson "may or may not have actual authority to make promises of lifetime employment." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 11. Thus, the plaintiff has failed to show that there is a genuine issue of fact for trial with respect to Ericson's actual authority.

■ Absent evidence of express authority, the plaintiff may also demonstrate that Ericson had apparent authority to hire him for life. *Thalin v. Friden Calculating Machine Co.*, 338 Mass. 67, 70, 153 N.E.2d 658 (1958). Apparent authority requires "conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent." *Hudson v. Massachusetts Property Underwriting Ass'n*, 386 Mass. 450, 457, 436 N.E.2d 155 (1982); *see Thalin*, 338 Mass. at 70, 153 N.E.2d 658. In order for Frankina to prevail at trial on this theory of apparent authority, therefore, he must demonstrate that the Bank exhibited some conduct that would have caused the plaintiff to reasonably believe that Ericson had the authority to make a lifetime contract. *Goldman*, 1992 WL 142031, at *3. As noted in *Thalin*, however, the circumstances that would "exist which would give rise to apparent authority, of even a principal corporate officer, to employ another for life" are rare. *Thalin*, 338 Mass. at 70, 153 N.E.2d 658. As such,

---

**4.** Plaintiff's attempt to differentiate between the public policy against age discrimination, which he concedes will not prevail, and the public policy against the Bank's consideration of his "seniority status" is specious. Further, ERISA, 29 U.S.C.A. § 1144(a) (West 1985), preempts plaintiff's argument that termination of long-term employees to avoid paying pension benefits and thereby generate financial savings for the company is a violation of public policy as an exception to the at-will doctrine, and his argument therefore fails. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

many instances of explicit assurances of lifetime contracts for employment by corporate agents in analogous Massachusetts cases have not bound the corporation because the agent had no apparent authority. *Rydman,* 373 Mass. at 855, 366 N.E.2d 763 (two company officials did not have apparent authority to guarantee plaintiff job until retirement age); *Porshin v. Snider,* 349 Mass. 653, 654–55, 212 N.E.2d 216 (1965) (general manager of a company did not have apparent authority to make a lifetime contract on behalf of the company); *Braden v. Trustees of Phillips Academy,* 321 Mass. 53, 55–56, 71 N.E.2d 765 (1947) (comptroller had no apparent authority to guarantee plaintiff that his job would last the rest of his life conditional on good behavior).

In support of its initial burden to demonstrate the absence of a genuine issue of material fact, the Bank asserts that it is undisputed that personnel at the Bank are employed on an at-will basis, and that no employee has a lifetime employment contract. Further, it asserts that there is no evidence that the Bank engaged in conduct that would suggest to a reasonable person that Ericson had authority to enter into a lifetime employment contract. Thus, the Bank has met its initial burden of demonstrating the absence of a genuine issue as to apparent authority. In support of its corresponding burden, plaintiff contends that, because of Ericson's job in personnel, the Bank authorized Ericson to hire the plaintiff as a security cage clerk. As evidence of apparent authority, plaintiff merely mentions the statements the agent made to him, not any conduct of the Bank to cause the plaintiff to reasonably believe that Ericson had authority. Given the precedents cited above and their narrow interpretation of the apparent authority doctrine, however, this minimal showing by the plaintiff does not demonstrate that there is a genuine issue of material fact for trial.

Because there remains no genuine issue as to the express or apparent authority of Ericson to make a lifetime contract, defendant is entitled to summary judgment on Count IV.

## VI.

In his third breach of contract claim, Count V, the plaintiff alleges that Demone promised at his exit interview, after plaintiff was terminated, that employees involved in the RIF would be handled preferentially in the Bank's rehiring procedures. Relying on this promise, the plaintiff claims that he focussed his employment efforts on Bank positions in the first six months after his termination, although he admits that he did apply elsewhere during this time period. Plaintiff asserts that Demone's representations constituted a contract, which the Bank breached by not giving preference to his applications for other positions within the Bank and by not rehiring him for jobs for which he applied and for which he was qualified. In response, the Bank states that, even if Demone had offered the plaintiff preferential treatment, which it disputes, the promise was gratuitous and, as such, did not constitute a contract due to lack of consideration.

Contracts in Massachusetts must be supported by consideration to be enforceable. Essentially, in order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor. *Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth.,* 357 Mass. 40, 42–43, 255 N.E.2d 793 (1970). Applying this definition of consideration to the instant case, the plaintiff's characterization of the promise as a contract fails. First, there was no legal detriment of the plaintiff, the promisee. In this alleged contract, the plaintiff did not give up anything, or refrain from doing anything, in exchange for the preferential treatment by the Bank. For example, the Bank did not require that the plaintiff refrain from applying for employment outside the Bank in exchange for handling his re-employment preferentially. Second, the Bank, the promisor, would derive no corresponding benefit by treating the plaintiff preferentially. Last, Demone's promise during the exit interview cannot be characterized as a bargained-for exchange.

Even plaintiff's description of the conversation demonstrates that the alleged promise of preferential treatment in rehiring plaintiff was a gratuitous act by Demone during an exit interview, after termination had already occurred, not a bargaining of the two parties over the terms and conditions of the termination. This Court thereby holds that the promise by the Bank was gratuitous, and the contract fails for lack of consideration.

Because the plaintiff's alleged oral contract is unenforceable for lack of consideration, this Court need not address the other elements of contract with respect to plaintiff's claim. Therefore, this Court grants defendant's summary judgment for Count V.