Sherman, PJ.
Plaintiff George K. Omartian (“Omartian”) instituted this action inthe Superior Court against his former employer, corporate defendant Investors Mortgage Insurance Company (“IMI”), and against his former IMI supervisors, individual defendants Banks, Marvin and Church, to recover damages for his termination as an IMI Account Executive. The action was transferred to the Waltham Division of the District Court Department for trial. G.Lc. 231, §102C.
After trial, the court made extensive findings of fact, disposed of twenty-eight (28) requests for rulings and made a finding for Omartian against IMI, under Counts I and III of the amended complaint,[2] for IMI’s breach of the parties’ at-will employment contract and breach of contract covenants of good faith and fair dealing. Judgment was also entered for all defendants on remaining complaint Counts II, V and VI.[3]
Defendant IMI thereafter sought an appeal to this Division on a charge of error in the court’s disposition of seven of IMI’s requests for rulings and in the court’s denial of IMI’s post-judgment motions for a new trial and relief from judgment[4]
The reported evidence indicates that, from 1976 through 1981, Omartian was employed as an account executive for the sale of IMI mortgage insurance to banks and other lending institutions in various designated New England sales territories. During a five year period of successive changes in the corporate structure and management of IMI, Omartian continued to earn company awards and annual salary increases for his sales performance, and was regarded as an industrious employee. The trial court specifically found that Omartian “was a highly productive employee and the company continually recognized his abilities and accomplishments until the *146 management of the final corporate takeover.”
In 1981, new IMI management recognized fundamental changes in the banking industry and a softening of the first mortgage market, and restructured corporate programs and policies in an effort to increase IMI’s share of the secondary mortgage insurance market IMI contends that Omartian wrongfully resisted the promulgation and implementation of new business practices and programs aimed at expanding IMI’s business and, in so doing, adversely affected his relationship with banking customers, his sales performance and his ultimate productivity.
Omartian’s employment was finally terminated for “lack of performance” on November 17,1981, effective December 31,1981.
Omartian contends, however, that he was terminated because he had complained to his supervisor (defendant Banks) six months prior to his termination that he was required to promote a new IMI sendee (the Unit Investment Trust or “U.I.T.”) which could not be sold without federal approval, and that promotion of the new concept impaired his credibility with his customers.
Omartian’s entitlement to benefits upon termination was governed by the parties’ written employment contract executed in January, 1981. The contract stated that Omartian’s employment as an account executive was terminable at will by either party. In the event of such termination, an account executive was not entitled either to renewal commissions on mortgage insurance policies renewed subsequent to termination, orto incentive bonus payments. Further, if terminated without cause, an account executive was entitled to severance pay for one month (for one to three years of employment) or three months (for more than three years of employment); if terminated for cause, he was not entitled to any severance pay. IMI paid Omartian his salary, renewal commissions and other undisclosed payments through the end of the fourth quarter of 1981, the effective date of his termination.
The trial court found that plaintiff Omartian was “wrongfully terminated by the defendant as a result of his perceived unwillingness to engage in unethical behavior and to comport himself contrary to legislatively recognized standards of behavior.” The laws or regulations which were allegedly violated are not identified or referenced in either the report or the judge’s findings. The trial court also found that “the plaintiff and... [IMI] management were aware that such a sales vehicle [the U.I.T.] required approval by various organizations,” and that the plaintiff was required to “promote” the yet unapproved concept and set up meetings between his superiors and senior executive officers of customer banks.
1. “The discharge of an at-will employee without cause is not alone a sufficient basis for imposing liability.” Gram v. Liberty Mut. Ins. Co., 384, 659, 671 (1981). It is, however, well established that an employee-at-will may recover contract damages arising from a termination in violation of public policy. See, e.g., DeRose v. Putnam Management Co., 398 Mass. 205 (1986) and collection of cases in Gram v. Uberty Mutual, supra at 668 n.6. “There is no public policy prohibiting an employer from discharging an ineffective at-will employee.” Korb v. Raytheon Corp., 410 Mass. 581, 584 (1991).
It is clear from both its subsidiary findings and its disposition of IMI’s requests numbers 14,18 and 19[5] that the trial court found that Omartian had not been termi *147 nated for unsatisfactory sales performance or other good cause, but had been wrongfully discharged solely as a result of his “perceived unwillingness to engage in unethical behavior and to comport himself contrary to legislatively recognized standards of behavior.” Stated alternatively, the court found that Omartian was fired for his unwillingness to promote the “U.I.T." concept. Once this factual determination of the actual reason for the plaintiffs discharge was made by the trial judge, the dispositive issue became one of law as to whether a public policy violation was implicated in the discharge. Mello v. Stop & Shop, 402 Mass. 555, 561 n.7 (1985). A termination of employment violates public policy if it is “in retaliation for performing an important and socially desirable act, exercising a statutory right or refusing to commit an unlawful act” Glaz v. Ralston Purina, 24 Mass. App. Ct. 386, 389-390 (1987). The burden of proof on this causal element is upon the plaintiff who must demonstrate by a fair preponderance of the evidence that the defendant-employer would not have discharged him but for conduct protected by that “public policy” principle upon which he relies. Mello v. Stop & Shop, supra at 558.
The report indicates that Omartian was merely directed to “promote” the Unit Investment Trust concept with his client banks. Our Supreme Judicial Court has yet to adopt a rule which renders an attempt to further the popularity of an item not yet brought to the market place, i.e. “promote” such item, as contrary to public policy. It is undisputed by the parties that an actual sale of a “U.I.T.” would have required some form of prior governmental approval. The report is devoid, however, of any evidence that Omartian was ever directed to sell the as yet unapproved conceptto any customer. In short, Omartian was not discharged for “refusing to commit an unlawful act” or for any other reason violative of established public policy. The trial court’s contrary ruling was error.
2. There was also error in the court’s related finding and rulings that defendant IMI breached those covenants of good faith and fair dealing implicit in its at-will employment contract with Omartian.
No evidence was reported to this Division which would support a finding or even raise an inference that IMI acted with some ulterior motive or intent to deprive Omartian of future renewal commissions or other compensation. Compare Fortune v. National Cash Register Co., 373 Mass. 96 (1977). Further, no bad faith or unfair dealing could be inferred solely from IMI’s discharge of Omartian which, as we have held, was not improper, illegal or violative of any established public policy. Indeed nothing appears in the findings and rulings of the court or in the report which would warrant or sustain a finding that the implied covenants of good faith and fair dealing in the parties’ employment relationship were violated by IMI. Glaz v. Ralston Purina Co., supra at 4.
Accordingly, the court’s judgment for the plaintiff on Counts I and III are hereby reversed and vacated. Judgment for defendant IMI is to be entered on Counts I and III. The remaining judgments for all defendants on Counts 11, V and VI are affirmed. So ordered.

 Omartian’s original complaint set forth the following claims: Count I — IMI’s breach of parties’ at-will employment contract; Count II — individual defendants’ wrongful dismissal of Omartian with malice and without good cause; Count III — IMI’s violation of implied covenants of good faith and fair dealing; and Count IV — IMI’s violation of G.L.C. 93A. The complaint was amended to include CountV — estoppel arising from defendants’ alleged misrepresentations, fraud and deceit; and Count VI — violation of G.Lc. 93A by individual defendants.

 Count IV of the original complaint was withdrawn as G.Lc. 93A is inapplicable to claims arisingfromanemployer-employee relationship. Dorfman v. I.D.A. Indus., 16 Mass. App. Ct. 714 (1985).

 The discretion of the trial judge to make such rulings was not argued or addressed by IMI. Dist/Mun. Cts. R. Civ. P., Rules 59, 60. See generally, Schulz v. Black, 369 Mass. 958 (1976); Hill v. Bookbinder, 4 Mass. App. Ct. 818 (1976).

 “14. Omartian had the burden of establishing that his termination was not for good cause, and he Med to sustain that burden [citations omitted].
“Denied - See Findings.
“18. That provision [in the January, 1981 contract between Omartian and IMI specifically providing that no renewal commission would be paid subsequent to termination] is enforceable and is not in conflict with any covenant of good faith and fair dealing implied in the contract [citations omitted].
“On the face of the contract — allowed; as the contract was applied — denied.
“19. IMI has not violated any covenant of good faith and fair dealing implied in its contracts with Omartian and is not liable to Omartian for damages of any kind, including damages based upon renewal commissions.
“Denied.”