Sosman, J.
Plaintiff has brought the present action alleging that he was wrongfully terminated from his employment on account of his having sustained a work-related injuiy. He complains that his employer violated G.L.c. 152, §75B(2) and, in the alternative, that his termination was in violation of public policy. Defendant has moved for summary judgment on the grounds that a claim for retaliation pursuant to G.L.c. 152, §75B(2) cannot be brought by an employee who has not yet exercised any rights under the Workers’ Compensation Statute at the time of the complained discharge and that there is no claim for wrongful termination in violation of public policy where plaintiff *178 failed to pursue his statutory remedy under G.L.c. 15 IB in a timely manner. For the following reasons, the motion for summary judgment is ALLOWED.
Facts
Plaintiff was previously employed as a store manager at Marty’s Liquors in Allston, Massachusetts. On August 1, 1995, plaintiff injured his knee at work while lifting kegs of beer. Despite his injury, he continued working his regular shift through Saturday, August 5, 1995. In the days immediately following his injury, he told some of his co-workers and his immediate supervisor that he had hurt his knee lifting kegs. He did not seek medical attention for his injury, nor did he request time off from work to recuperate.
Plaintiff attended a company outing on Sunday, August 6, at which he participated in a softball game. Plaintiffs knee injury bothered him when he tried to run in the early innings of that game, and he withdrew from the game at that point.[1]
On August 7, 1995, plaintiff reported for work but left early to seek medical attention for his knee. His doctor recommended that plaintiff remain out of work until August 11 and then return to work limited to light duty for one week. The doctor also recommended that plaintiff follow up with an orthopedic specialist. Plaintiff immediately advised his employer that he would be out from work for the next several days. He alleges that the store owner, Martin Siegal, was displeased at this news. In that conversation, plaintiff did not say or suggest anything about pursuing any claim for workers’ compensation. Plaintiff followed his doctor’s advice and did not come in to work.
On August 9, 1995, plaintiff saw an orthopedist for further evaluation of his knee injury. That doctor recommended that he remain away from work for another ten days. Plaintiff called Siegal to report this doctor’s new recommendation. As in the prior conversation, plaintiff did not say or suggest anything concerning any potential claim for workers’ compensation. Plaintiff alleges that, upon being advised that plaintiff would have to stay out of work for ten more days, Siegal told plaintiff he would have to be “replaced” and that he would have to turn in his keys. Plaintiff understood this to mean that he was terminated. He turned in the keys on August 9, 1995 and did not return to work thereafter.[2]
On August 29, 1995, plaintiff filled out an application for benefits under his employer’s short-term disability plan.[3] The insurance carrier denied coverage.
On October 21, 1995, plaintiff signed a workers’ compensation claim form to be submitted to the Department of Industrial Accidents. That form was not submitted to the Department until December 21, 1995, after the denial of plaintiffs short-term disability insurance claim. Plaintiffs workers’ compensation claim for total disability was rejected, but he was ultimately, awarded partial disability for the period from August 12, 1995 through December 4, 1995.
Plaintiff filed the present complaint on April 12, 1996. Plaintiff did not file any claim of handicap discrimination with the Massachusetts Commission against Discrimination.
Discussion
1. G.L.c. 152, §75B(2)
The Workers’ Compensation Statute prohibits retaliation against workers as follows:
No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter, or who has testified or in any manner cooperated with an inquiry or proceeding pursuant to this chapter, unless the employee knowingly participated in a fraudulent proceeding.
G.L.c. 152, §75B(2). In the event of such retaliation, the employee may bring an action in the Superior Court for lost wages, injunctive relief and attorneys fees. Id. Count I of plaintiffs complaint alleges a violation §75B(2).
It is undisputed that, at the time of his alleged discharge, plaintiff had not sought workers’ compensation or announced any intent to seek such compensation.[4] As such, defendant contends that plaintiff had not “exercised a right” afforded by the Workers’ Compensation Statute (or even telegraphed any intention to exercise such a right) and that the alleged termination can not possibly have been in retaliation for having “exercised” such a right.
Plaintiff acknowledges the use of the past tense (“exercised”) in the statute, but argues that he “exercised a right” afforded by the Workers’ Compensation Statute when he told his employer that he had been injured on the job. The right to tell one’s co-workers and supervisor that one has been injured while at work does not, in any sense, stem from the Workers’ Compensation Statute. Such a right pre-dates and exists independently of such laws. What the statute provides is compensation for such workplace injuries, and §75B(2) is intended to protect workers from retaliation for having pursued their rights to collect such compensation. Merely telling one’s employer that one has been injured, in the absence of filing any claim for workers’ compensation or even signaling to the employer any intent to seek workers’ compensation, is not the exercise of a right afforded by the Workers’ Compensation Statute.[5]
Plaintiff argues that this interpretation of §75B(2) would allow employers to fire injured workers with impunity as long as the firing occurred prior to the actual filing of a workers’ compensation claim. The argument lacks merit. As a matter of statutory interpretation, §75B(2) does not prevent actions against workers on account of their injuries, but only protects *179 them from retaliation for having “exercised a right afforded by this chapter.” If the Legislature intended the §75B(2) remedy to protect workers from retaliation for having gotten injured on the job, it could easily have said so.
Rather, the broader protection from discrimination on account of workplace injury (as opposed to protection against retaliation) is found in §75B(1):
Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under [G.L.c. 151B).
G.L.c. 152, §75B(1). Thus, discrimination against an injured but qualified worker on account of his workplace injury is unlawful handicap discrimination, for which such a worker may pursue his claim under the employment discrimination laws. Plaintiffs allegation that his employer fired him because he had suffered a workplace injury would (but for his failure to pursue a timely administrative complaint) state a claim f r unlawful handicap discrimination. Where the wrongful conduct complained of has already been expressly addressed by the Legislature in §75B(1) and given a remedy in G.L.c. 151B, the court does not need to adopt a tortured construction of §75B(2) in order to provide a remedy for that same wrong. Moreover, adopting that tortured construction would allow plaintiff to bypass the administrative scheme that the Legislature intended be followed for such claims.
Where plaintiff has no evidence that he “exercised a right afforded by” the Workers Compensation Statute prior to his discharge, he cannot prove that he was discharged “because” he “exercised” such a right and cannot prevail on his claim under G.L.c. 152, §75B(2). Defendant is therefore entitled to summary judgment on Count I of plaintiffs complaint.
II. Termination in Violation of Public Policy
Where a specific statutory remedy has already been provided by the Legislature, the court will not recognize a common law claim for violation of the “public policy” expressed in that statute. Mello v. Stop & Shop Cos., 402 Mass. 555, 557 (1988). Recognition of such a common law claim is particularly inappropriate where it would be contrary to the limitations or procedural requirements set by statute. Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 541-43 (1987); Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 512-14 (1985), aff'd mem., 397 Mass. 1004 (1986).
Here, the public policy that plaintiff invokes is expressed in a statute that contains its own detailed remedial scheme. Pursuant to G.L.c. 152, §75B(1), an employee with a work-related injury who can perform the essential functions of his job, or who can do so with reasonable accommodations, is a “qualified handicapped person” under G.L.c. 151B. Plaintiff, whose workplace injury required only modest and temporary accommodation in order for him to perform the essential functions of his job as store manager, was thus a qualified handicapped person. Termination of a qualified handicapped person because of his handicap is unlawful employment discrimination, G.L.c. 151B, §4(16), and plaintiff thus had available to him the remedies provided by G.L.c. 151B. In pursuing a common law claim for termination in violation of public policy, plaintiff is seeking to circumvent the requirement that his claim of unlawful handicap discrimination be filed with the MCAD within six months. Such a common law claim will not be recognized.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendant.

Defendant contends that the disabling knee injury of which plaintiff complains was incurred during this August 6 softball game and not at work. Plaintiff contends that the injury was incurred while at work on August 1 and that his difficulties during the softball game merely highlighted the seriousness of his condition and/or further aggravated the prior injury. For purposes of this summary judgment motion, the court must accept plaintiffs version and the court will therefore assume that plaintiffs disabling injury was incurred at work on August 1, not at the August 6 outing.

Defendant denies that plaintiff was terminated and characterizes the conversation with plaintiff as a discussion concerning coverage for plaintiff during his absence. On this summary judgment motion, the court must not only accept plaintiffs version of events as true but must also draw all permissible inferences in plaintiffs favor. Accordingly, for purposes of this motion, the court must accept plaintiffs interpretation of this conversation and will thus assume that plaintiff was in fact terminated from his job on August 9, 1995.

On that form, plaintiff was asked whether his disability was work related, to which plaintiff checked “Yes.” The form then asked whether he had filed a workers’ compensation claim, to which plaintiff checked “No.” Finally, the form asked whether the applicant intended to file for workers’ compensation, to which plaintiff checked “Yes.” Another portion of the form was to be completed by the employer. The Marty’s Liquor’s representative who signed the employer’s portion of the form dated it August 28, 1995 — Le., prior to the date that plaintiff signed his portion of the form. It is thus unclear whether plaintiffs indication on that form to the effect that he intended to seek workers’ compensation was revealed to Marty’s Liquors at that time. Even assuming it was, that form was presented to Marty’s Liquors well after the alleged termination.

Moreover, as of the August 9 termination, plaintiff was not even eligible for workers’ compensation. Pursuant to G.L.c. 152, §29, no compensation may be paid "for any injury which does not incapacitate the employee from earning full wages for a period of five or more calendar days.” Although plaintiff contends that his injury occurred on August 1, 1995, he had continued to work up through August 7, and thus was not “incapacitated from earning full wages” on those intervening dates. As his later workers’ compensation claim form confirms, the first date of disability was August 8. Thus, as of the August 9 phone call, plaintiff had only been incapaci *180 tated from work for two days and had not yet suffered the minimum period of disability required for workers’ compensation.

 Nothing in Ourfalian v. Aro Manufacturing Co., 31 Mass.App.Ct. 294 (1991), suggests otherwise. In Ourfalian, the Appeals Court held that a complaint alleging that plaintiff had been terminated after a workplace injury, coupled with an allegation that several other employees had been fired for filing workers’ compensation claims, should not have been dismissed for failure to state a claim. The court, applying the standard for a motion to dismiss, reasoned that the “clear inference” of plaintiffs complaint was that plaintiff had been discharged “in retaliation for filing such a claim.” 31 Mass.App.Ct. at 296-97. The court’s analysis thus assumed that Ourfalian had, like the other employees referred to in his complaint, sought workers’ compensation and been fired on account of having done so. The present plaintiff argues that, since the timing of Ourfalian’s discharge put it a few days prior to the date that Ourfalian could have filed a formal claim with the Department of Industrial Accidents, he must not have filed his formal claim prior to his discharge. Nowhere did the Appeals Court address this issue in Ourfalian, and the record did not bring the issue to the Appeals Court’s attention. Moreover, while a formal claim can not be filed with the Department until the workers’ compensation insurance carrier has denied coverage or until thirty days have elapsed since the onset of disability (G.L.c. 152, §10(1)), the process of seeking benefits from the workers’ compensation carrier can start in advance of that formal claim (G.L.c. 152, §§6, 7 and 8), and the plaintiff in Ourfalian could have “exercised” his right to benefits in some fashion short of a claim to the Department. Here, on a summary judgment motion, plaintiff does not dispute that he did nothing, in even a preliminary way, to invoke his right to workers’ compensation or announce any intent to pursue such compensation prior to the time of his discharge.